[No. 2733–3. Division Three. May 10, 1979.]

HAYNES GEARHEART, ET AL, *Appellants,* v. FRED SHELTON, ET AL, *Respondents.*

*John Moberg*, for appellants.

*H. J. Merrick*, *Gerald L. Bopp*, *Homer B. Splawn*, *Fred Shelton*, and *Willadene Livingston*, for respondents.

GREEN, C.J.—Plaintiffs appeal summary judgments dismissing their claims against the Estate of Elwyn Judson Livingston (Estate), its administrator Fred Shelton (Administrator), his wife, and the Adams County Title Insurance Company (ACTC).

The uncontroverted facts may be summarized as follows:

On February 9, 1973, plaintiffs executed an offer to purchase from the Estate a parcel of land known as the "family farm." The offer provided in part:

Seller [Administrator] shall obtain for the Purchaser [plaintiffs], within a reasonable time, a standard form preliminary report from the [ACTC] showing the condition of the title, and furnish to the Purchaser, at time of closing, a Purchaser's policy of title insurance, insuring the Purchaser in the full amount of the purchase price, with merchantable title *free of encumbrance except those set forth herein.*[1] If title is not insurable, as herein provided, and cannot be made insurable within

---

[1]The encumbrances listed in the offer were:

"1. The terms and conditions of that certain unexpired Lease dated the 20th day of February, 1969, by and between Willadene S. Livingston, as the Executrix of the estate of Elwyn Judson Livingston, and Willadene S. Livingston, individually, as Lessor and Joe Buck and Gretchen Buck, his wife, as Lessees, terminating on December 1, 1973, which Lease is filed for record as Document No. 125233, in Book 6 of recorded instruments, pages 203–8, records of the Adams County Auditor.

one hundred twenty (120) days from the date of delivery of such title report, any earnest money deposited in connection with this option to purchase, shall be refunded and all rights of the Purchaser terminated; *provided that Purchaser may waive any defects and elect to purchase, or may extend the time for the removal of such defects.*

(Italics ours.) The Administrator accepted the offer on February 12, 1973. On March 12, ACTC issued a preliminary title report showing insurable title within the terms of the offer. On May 22, the Adams County Superior Court confirmed the offer and acceptance. On June 6, the Administrator executed a deed to the ACTC, as escrow agent, together with instructions to proceed to close the sale. On June 25, an ACTC preliminary title report showed an additional exception—a lis pendens and suit filed by the widow of Elwyn Livingston, who was then in possession of the house located on the "family farm." That suit was subsequently dismissed and in October 1973, the Administrator moved to have the widow evicted. The Adams County Superior Court, however, refused to do so pending the outcome of her appeal of the dismissal. Whereupon the ACTC refused to insure the title against the widow's action. The Administrator then offered to return plaintiffs' earnest

---

"2. Future assessments of the East Columbia Basin Irrigation District and the rules and regulations of said District, affecting irrigated lands lying within said district.

"3. Future assessments of the weed control and mosquito districts ·in which said lands are situated.

"4. Terms and conditions of recordable contracts with the United States of America describing said lands.

"5. Reservations in any U.S. patent, deed from the United States or State of Washington in the chain of title and laws of the United States or State of Washington, and ordinances of Adams County, affecting Columbia Basin Project lands and the use and disposition of same.

"6. Right of ways and easements of record for roads, irrigation canals, drains, power or utility lines of record, shown on the face of the plat thereof, or visible on the premises, including any limitation of access thereto.

"7. Reservations, restrictions and encumbrances of record common to Columbia Basin Project lands, which do not otherwise affect the merchantability thereof."

money but plaintiffs advised him that they wished to keep the "sale" alive pending the outcome of the widow's appeal.

The failure of the sale to close obligated the Administrator to expend funds for mortgage, property tax, insurance, and irrigation and weed assessment payments.[2] Hence, the Administrator received the court's permission to advertise the "family farm" for lease by sealed bid.[3] Plaintiffs were notified and bid but were not successful for the years 1974, 1975, and 1976.

In the meantime, this Court reversed the dismissal of the widow's suit holding that she had made a prima facie showing that she was entitled to be subrogated to the rights of a creditor in certain land ostensibly including the "family farm." *Livingston v. Shelton,* 11 Wn. App. 854, 526 P.2d 385 (1974). That decision was reversed in *Livingston v. Shelton,* 85 Wn.2d 615, 537 P.2d 774 (1975). Eventually, the widow's petition for certiorari to the United States Supreme Court was denied in *Livingston v. Shelton,* 424 U.S. 958, 47 L. Ed. 2d 365, 96 S. Ct. 1437 (1976).

During the pendency of the appeal, inflationary forces dramatically drove up the value of land in the Columbia Basin. Upon learning of the denial of certiorari, the Administrator moved for instruction as to how to proceed. Contemporaneously, the plaintiffs obtained an order to show cause why the sale should not be closed based on the 1973 offer. The court reconfirmed the sale and the sale was closed.[4]

Shortly thereafter, plaintiffs commenced the instant suit for judgment against all defendants jointly and severally for, among other things, reasonable rental for the "family

---

[2]The Administrator and one of the plaintiffs discussed the possibility of the latter leasing the "family farm" for a fixed fee per acre during the pendency of the appeal and that if the sale closed plaintiffs would not have to pay the rent or if it was paid it would be refunded; however, these discussions did not reach fruition.

[3]Plaintiffs' offer was subject to a lease for the growing season of 1973.

[4]Six months later, plaintiffs sold the "family farm" for approximately $360,000.

farm" and dwelling thereon for the years 1973–76, $3,000 which supposedly represented damages paid by the Bureau of Reclamation to the estate for injury to the "family farm," and $3,487 for legal fees expended in obtaining title to the "family farm."

The dispositive issue is whether the May, 1973, confirmation transferred equitable title to the "family farm" to the plaintiffs so as to entitle them to the money claimed. We hold in the negative.

■ An order confirming an offer and acceptance for the sale of property by an administrator is absolute proof that all statutory provisions and orders of the court with reference to the sale have been satisfied. RCW 11.56.115. As such, it vests in the purchaser whatever interest the documents supporting the petition for confirmation purport to vest. *Moller v. Niagara Fire Ins. Co.*, 54 Wash. 439, 103 P. 449 (1909). In the instant case, the plaintiffs agreed to purchase the "family farm" subject to certain conditions, *e.g.*, the plaintiffs' title being subject to only those encumbrances specified in footnote 1. The court confirmed that arrangement. The problem arose upon the refusal of ACTC to insure against the widow's suit and lis pendens coupled with the refusal of the Adams County Superior Court's refusal to evict her pending her appeal. At that point, plaintiffs under the terms of the offer had the option of waiving that "defect" in the title or extending the time for closing to permit the Administrator to remove the defect. If plaintiffs had waived the defect, they would then have been entitled to a deed to the "family farm" and a pro rata share of the rent paid by the 1973 tenant according to the terms of the offer.[5] Instead, they extended the time for the Administrator to remove the defect. Hence, when the defect was ultimately removed in 1976, the sale was reconfirmed. It was at that time that equitable title passed. Thus, the pivotal element to sustain plaintiffs' suit against the

---

[5]It is interesting to note that the original lender advised ACTC that it did not want a title insurance policy excepting the widow's claim.

defendants is missing and the trial court properly granted summary judgment. *Brown v. Child,* 3 Wn. App. 342, 474 P.2d 908 (1970).

As for the taxing of costs, the Administrator who served as attorney for the estate and also appeared as a party defendant was present in court in two separable capacities, and in the former role the estate is entitled to receive statutory attorney's fees for his services. The costs defendants incurred in taking the depositions in support of their motions for summary judgment and in opposition to plaintiffs' motion and which were specifically considered by the trial court are taxable under the rule announced in *Tombari v. Blankenship–Dixon Co.,* 19 Wn. App. 145, 150, 574 P.2d 401 (1978).

We have closely examined the material submitted by the defendants in support of their motions and find that the Superior Court did not base its decision on material outside the purview of CR 56(e).

The judgment is affirmed.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied June 15, 1979.

Review denied by Supreme Court September 7, 1979.