[No. 62899-8.　En Banc.　January 11, 1996.]

ROGER WAGNER, ET AL., *Respondents*, v. DON FOOTE,
ET AL., *Petitioners*.

*Donald J. Bisagna*, for petitioners.
*David L. Day*, for respondents.

JOHNSON, J. — This case involves a dispute between shareholders of a closely held corporation over the distribution of the proceeds from the sale of the assets of the corporation. More specifically, we have to decide whether and under what circumstances the opportunity to enter into a noncompetition agreement by a corporate officer/ majority shareholder in conjunction with the sale of the corporation's assets is an opportunity belonging to the corporation or is personal to the officer/shareholder. We

hold that the opportunity to enter into the noncompetition agreement is personal to the officer/shareholder so long as the corporation receives the full fair market value for the corporation's assets. We also find the trial court erred in awarding one party one-half of his account/expert witness fees. We reverse and remand.

## FACTS

The Plaintiffs' theory in this case has evolved since the beginning of the case from a claim for breach of an employment contract to a claim based on a corporate officer's breach of fiduciary duty. The trial court found that rather than an employer/employee relationship, the Defendants and Plaintiffs, respectively, were the 75 percent and 25 percent shareholders of the corporation. For purposes of this appeal, the trial court's findings and conclusions regarding the 75 percent/25 percent ownership structure are not in dispute.

Don Foote, Petitioner, owned and operated a two-way radio broadcast and repair business in Mount Vernon, Washington. In 1988, Foote incorporated his business and also hired Roger Wagner, Respondent, as an employee. The trial court found Foote and Wagner had entered a valid agreement making Wagner a 25 percent shareholder in Foote Communications, Inc. In exchange for the stock, Wagner signed a promissory note for $39,500 based on a valuation of the company of $158,000. The promissory note was paid in $500 monthly installments taken from Wagner's paycheck. The $500 was deducted from Wagner's check throughout his employment.

In October 1989, Questar Telecom, Inc. (Questar) offered to buy Foote Communications for $525,000. Both Foote and Wagner took part in the initial meetings with Questar; however, Foote alone completed the agreement with Questar. As part of the agreement to sell the corporation, Questar asked Foote to sign a three-year noncompetition agreement. Foote signed the agreement and Questar

acquired the corporation on March 1, 1990. When Foote signed the final purchase agreement, $138,000 was allocated to the noncompetition agreement.

Wagner left Foote Communications in February 1990, just prior to the completion of the sale. Following the sale, Foote paid $56,054 to Wagner, which he characterized as bonus and salary. Wagner disputed the amount Foote owed him from the sale and filed this suit seeking to recover lost wages.

The trial court, however, decided the case on completely different grounds. Although both parties assumed their attempt to reach a stock purchase had never materialized, the trial court concluded the original stock agreement was valid and Wagner owned 25 percent of the company as of April 1988.[1] The court then instructed the parties to determine the amount owed Wagner for his 25 percent share of the company from the time of agreement in 1988 until the sale in 1990. The court instructed Foote Communications' accountant to present an accounting of Wagner's rights and liabilities as a 25 percent shareholder. The corporate accountant, Roger Sayer, prepared his report based on the fact that $138,000 of the purchase amount was not for corporate assets, but consideration for Foote signing the noncompetition agreement. During the trial, the issue of the noncompetition agreement was never raised and no testimony was given regarding it. The noncompetition agreement became an issue after the court issued its oral decision.

Wagner objected to this accounting and hired his own accountant/expert witness, Lawrence Pirkle, to prepare an alternative accounting. Pirkle is also an attorney. Pirkle determined Wagner's share of the sale should be 25 percent of the full $525,000 sale price. He stated that allocating part of the price to the noncompetition agreement was the equivalent of Foote usurping a corporate opportunity.

---

[1]The Court of Appeals affirmed the trial court's decision regarding the stock purchase agreement and we did not accept review of that issue.

No hearing was ever held regarding the conflicting views of the accountants. In a letter dated April 1, 1993, the court informed the parties the full $525,000 figure was the proper figure in determining what Wagner was owed. The judge's only comment regarding this decision was that Wagner had not been consulted nor had he agreed to the allocation of the noncompetition agreement.

The court entered its written findings of fact and conclusions of law on April 22, 1993. No specific findings or conclusions were made regarding the noncompetition agreement or the value of the corporation's assets. The reports of both accountants also failed to address the valuation issue. The trial court adopted Pirkle's accounting and awarded Wagner $34,649.[2] The court also awarded prejudgment interest and one-half of the lawyer/accountant fees of Wagner's expert, Pirkle. The fees were awarded as part of the general award of damages to Wagner.

The Court of Appeals affirmed the trial court's decision in an unpublished opinion. *Wagner v. Foote*, No. 32788-7-I (Apr. 10, 1995). The Court of Appeals cited no authority in finding the trial court had not abused its discretion in awarding one-half of Pirkle's fees. *Wagner*, No. 32788-7-I, slip op. at 10. In affirming the damage award based on the full $525,000 sale price, the Court of Appeals stated the trial court was faced with a battle of experts and was free to choose which one to believe. The court found substantial evidence supported the choice made by the trial court. *Wagner*, No. 32788-7-I, slip op. at 11-12. By affirming the trial court's decision, the Court of Appeals implicitly held that a majority shareholder or corporate officer who receives consideration for a noncompetition agreement, entered into in conjunction with the sale of corporate assets, usurps a corporate business opportunity as a matter of law.

---

[2]This $34,649 is the amount still owed Mr. Wagner, for the remainder of his share of the sale as well as his 25 percent share of the profits and losses of the corporation for the period 1988 to 1991. It also accounts for the amounts Mr. Wagner owed the corporation.

We find the Court of Appeals and trial court failed to correctly analyze the noncompetition agreement issue, and, therefore, failed to make the factual findings necessary to support the damage award. We also find the trial court erred in awarding one-half of Pirkle's fees as part of the general damage award.[3]

ANALYSIS

Noncompetition Agreements and
the Sale of Corporate Assets

We first address the issue of the propriety of a corporate officer receiving consideration for a noncompetition agreement in conjunction with the sale of a corporation's assets. Our courts have not directly addressed this issue.

■ The corporate opportunity doctrine prohibits directors or officers from appropriating to themselves business opportunities that rightfully belong to the corporation. *See Equity Corp. v. Milton*, 43 Del. Ch. 160, 164, 221 A.2d 494, 497 (1966); 19 C.J.S. *Corporations* § 513 (1990). Whether a particular business opportunity belongs to the ccrporation or is personal to an individual depends upon the facts and circumstances of each particular case. *Equity Corp.*, 43 Del. Ch. at 164, 221 A.2d at 497; 19 C.J.S. *Corporations* § 513.

■ In general, an individual's agreement not to compete is consideration only an individual can provide and thus is not a business opportunity belonging to the corporation. *See Smith v. Good Music Station, Inc.*, 36 Del. Ch. 262, 267-69, 129 A.2d 242, 245-46 (1957); *Pupecki v. James Madison Corp.*, 376 Mass. 212, 217, 382 N.E.2d 1030, 1033 (1978). However, if allocating funds as consideration for a noncompetition agreement results in a corporation receiving less than fair market value for the sale of its assets, then the officer or director is unlawfully diverting funds rightfully belonging to the corporation. *Pupecki*, 376 Mass.

---

[3]Petitioners' motion to strike Respondents' supplemental brief is denied.

at 216-17, 382 N.E.2d at 1033. In sum, a corporate director or officer is not diverting corporate assets during a sale of all of a corporation's assets when the director or officer receives consideration for signing a noncompetition agreement in favor of the purchaser of the corporate assets, so long as the corporation receives fair market value for the corporate assets sold. *Smith*, 36 Del. Ch. at 267-69, 129 A.2d at 245-46; *Pupecki*, 376 Mass. at 216-17, 382 N.E.2d at 1033.

In *Smith*, a minority shareholder brought suit against the corporation and the two majority shareholders individually to enjoin or rescind the sale of the corporate assets (a radio station). *Smith*, 36 Del. Ch. at 264-68, 129 A.2d at 243. The purchaser, another radio station corporation, negotiated to purchase all of the assets of Good Music Station, Inc. (GMS), and separately negotiated noncompetition and consulting agreements with Rogers, one of the majority shareholders and a corporate officer. *Smith*, 36 Del. Ch. at 265-66, 129 A.2d at 244-45. The plaintiff alleged the money paid for the noncompetition and consulting agreements rightfully belonged to GMS because it was nothing more than payments to Rogers to induce him to sell GMS. The court disagreed, finding the plaintiff had not alleged that the fair market value was not received for GMS's assets. Additionally, the court found only Rogers could provide the consideration of agreeing not to compete sought by the purchaser, and there was no reason for Rogers to agree to the noncompetition agreement without receiving valuable consideration. *Smith*, 36 Del. Ch. at 268, 129 A.2d at 246; *contra Dunaway v. Parker*, 215 Ga. App. 841, 848, 453 S.E.2d 43, 50 (1994) (holding a defendant, corporate officer had misappropriated a valuable corporate asset by not disclosing to the corporation during the sale of the corporation that he had negotiated a $300,000 payment for a noncompetition agreement).

We find the reasoning and rationale of *Smith* and *Pupecki* persuasive. We hold that the opportunity of entering into a noncompetition agreement is not generally an op-

portunity available to a corporation as an entity. Therefore, a corporate officer is allowed to receive compensation for entering into a noncompetition agreement in conjunction with the sale of the corporation or its assets so long as the corporation receives the fair market value of its assets.

In this case, Foote and Wagner were both involved in the opening negotiations with Questar. The first offer made by Questar was $500,000. Foote made a counteroffer of $525,000 that Questar accepted. Foote testified that the price was based on an approximate valuation of $100,000 for each of Foote Communications' five channels. On the other hand, the purchase price allocation agreement, signed by Foote and N.R. Potter of Questar, is contradictory evidence of the value of the corporation's assets. The agreement, signed on March 1, 1990, individually allocated prices for the various assets of the corporations and included a $138,000 allocation for the noncompetition agreement. The five channels (listed in the agreement as "Antenna System," "Transmitter Equipment," and "Subscriber Base Value") were valued at $295,000 in the agreement.

The trial court in its written findings of fact and conclusions of law made no mention or finding regarding either the part of the sale price allocated to the noncompetition agreement or the valuation of the corporate assets in the purchase price allocation agreement. The trial court's only mention of the $138,000 allocated for the noncompetition agreement is in a letter to the attorneys dated April 1, 1993. In this letter, the judge stated Wagner was neither consulted about this allocation nor consented to it. This finding is immaterial. Because the opportunity to enter into a noncompetition agreement is not an opportunity available to the corporation, Foote as an individual was not required to consult or obtain Wagner's consent before entering the agreement.

The evidence in this record is insufficient to make a finding as to the proper value of the corporate assets and

the noncompetition agreement. Without such findings, we cannot determine whether corporate funds were improperly diverted to Foote as an individual.

In sum, we hold that the opportunity for a corporate officer/shareholder to enter into a noncompetition agreement in conjunction with the sale of the corporation's assets is not a corporate business opportunity. However, when the consideration for such an agreement made in conjunction with the sale of corporate assets results in the corporation receiving less than fair market value for the corporate assets, the corporate assets have been unlawfully diverted in violation of the corporate officer/ shareholder's fiduciary duty. We reverse and remand for further proceedings consistent with this opinion.

## Expert Account Fees

The trial court also included one-half of Pirkle's accountant/expert witness fees as part of the general award of damages. We hold the court had no authority on which to base this award and, therefore, reverse this award of fees.

Washington follows the American rule concerning attorneys' fees and litigation expenses. *Rorvig v. Douglas*, 123 Wn.2d 854, 861, 873 P.2d 492 (1994). The American rule states fees and expenses are not recoverable absent specific statutory authority, contractual provision, or recognized grounds in equity. *State ex rel. Macri v. City of Bremerton*, 8 Wn.2d 93, 102, 111 P.2d 612 (1941); *Fiorito v. Goerig*, 27 Wn.2d 615, 619-20, 179 P.2d 316 (1947). CR 54(d) authorizes a prevailing party to recover certain costs as provided in RCW 4.84 or any other applicable statute.[4] Expert witness fees are not included in the definition of costs[5] or recoverable as costs under RCW

---

[4]CR 54(d) states: "**Costs.** Costs shall be fixed and allowed as provided in RCW 4.84 or by any other applicable statute."

[5]RCW 4.84.010 defines costs to include:

4.84.030,[6] .080[7] or RCW 2.40.010.[8] *Jordan v. Berkey*, 26 Wn. App. 242, 245, 611 P.2d 1382 (1980); *Andrews v. Burke*, 55 Wn. App. 622, 631, 779 P.2d 740, *review denied*, 113 Wn.2d 1024 (1989).

■■ Here, the trial court awarded one-half of Mr. Pirkle's fees as part of the general award of damages and not explicitly as costs. Despite the court's characterization of this part of the award as damages, expert witness fees are not a proper element of damages, nor are they awardable as costs. We have clearly articulated this rule:

Where an expert is employed and is acting for one of the parties, it is not proper to charge the allowance of fees for

(1) Filing fees;

(2) Fees for the service of process by a public officer, registered process server, or other means, as follows:

. . . .

(3) Fees for service by publication;

(4) Notary fees, but only to the extent the fees are for services that are expressly required by law and only to the extent they represent actual costs incurred by the prevailing party;

(5) Reasonable expenses, exclusive of attorneys' fees, incurred in obtaining reports and records, which are admitted into evidence at trial or in mandatory arbitration in superior or district court, including but not limited to medical records, tax records, personnel records, insurance reports, employment and wage records, police reports, school records, bank records, and legal files;

(6) Statutory attorney and witness fees; and

(7) To the extent that the court or arbitrator finds that it was necessary to achieve the successful result, the reasonable expense of the transcription of depositions used at trial or at the mandatory arbitration hearing . . . .

[6]RCW 4.84.030: "**Prevailing party to recover costs.** In any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements . . . ."

[7]RCW 4.84.080: "**Schedule of attorneys' fees.** When allowed to either party, costs to be called the attorney fee, shall be as follows:

(1) In all actions where judgment is rendered, one hundred twenty-five dollars.

(2) In all actions where judgment is rendered in the supreme court or the court of appeals, after argument, one hundred twenty-five dollars."

[8]RCW 2.40.010: "**Witness fees and mileage.** Witnesses shall receive for each day's attendance in all courts of record of this state the same compensation per day and per mile as jurors in superior court. Witnesses in any other court shall receive for each day's attendance the same compensation per day and per mile as jurors in district court."

such expert against the losing party as a part of the costs of the action. If the services of an expert are necessary for the proper presentation and determination of the case, such expert or accountant should be appointed by and act under the direction of the court.

. . . .

[W]e held that the court has no power in an adversary proceeding to assess attorneys' fees in the absence of statute or contract, and that the rule is applicable in equitable as well as in law actions. We further stated that the rule applies with as much or greater force to charges of accountants.

*Fiorito*, 27 Wn.2d at 620 (citations omitted). Thus in this case, whether Mr. Pirkle's fees are characterized as expert witness fees or accountant fees, the court may not award them as costs or damages absent specific statutory, contractual, or recognized equitable grounds.

No such grounds exist in this case, nor did the trial court or Court of Appeals cite any such grounds in awarding these fees. Mr. Pirkle is an accountant and attorney, employed by and acting for one party in an adversarial proceeding. He owed his professional duty to Wagner and not to the court. His report included his financial opinion as well as conclusions of law, that supported his client's position. Therefore, this case falls squarely within the rule articulated in *Fiorito*, 27 Wn.2d at 620.

The trial court erred in awarding one-half of Pirkle's fees. Neither RCW 4.84.030, .080 or RCW 2.40.010 authorize the award of expert witness fees as costs. Additionally, no grounds in equity support an award of expert witness fees in this case. We reverse the trial court and order the damage award to Wagner be reduced by $1,325.25, the amount awarded for one-half of Lawrence Pirkle's fees.

## CONCLUSION

As a matter of law, Foote did not usurp a corporate business opportunity by entering into a noncompetition agreement in return for valuable consideration. However, if the allocation of $138,000 of the purchase price as consider-

ation for the noncompetition agreement resulted in the corporation receiving less than the full fair market value of its assets, then Foote has unlawfully diverted assets rightfully belonging to the corporation. Because the trial court did not make the factual findings necessary to answer this question, we remand for further proceedings consistent with this opinion. We also order the damage award be reduced by $1,325.25, the amount awarded for one-half of Lawrence Pirkle's accountant/expert witness fees.

DURHAM, C.J., DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.