[No. 26564-1-III.   Division Three.   November 6, 2008.]

CYNTHIA ESTEP, *Appellant*, v. GENE HAMILTON ET AL.,
*Respondents*.

248

*Russell K. Jones*, for appellant.

*John P. Bowman* (of *Keefe Bowman & Bruya, PS*) and *J. Gregory Lockwood* (of *J. Gregory Lockwood, PLLC*), for respondents.

¶1 BROWN, J. — Cynthia Estep appeals the summary dismissal of her legal malpractice claims against Gene E. Hamilton and his former law partners, Donald Hackney and Charles Carroll. She contends Mr. Hamilton was negligent when representing her in her divorce from Michael Raymond. She argues Mr. Hamilton failed to act to preserve her beneficiary interest in Mr. Raymond's life insurance policy and misadvised her about the effect of the divorce on the beneficiary designation. Ms. Estep fails to show proximate cause for her claimed injury and fails to show apparent authority by acts flowing from the former partners directed toward her. We affirm.

## FACTS

¶2 Mr. Hackney, Mr. Hamilton, and Mr. Carroll practiced in a general partnership. Hackney, Hamilton & Carroll dissolved on December 31, 2002. In January 2003, Mr. Hackney and Mr. Carroll began a practice together, while Mr. Hamilton began a solo practice as Hamilton Law Offices, PLLC, sharing space with his former partners until the end of 2004. In November 2002 during the partnership,

Ms. Estep briefly consulted Mr. Hamilton, but she apparently paid no fee and did not engage Mr. Hamilton.

¶3 On August 7, 2003, Ms. Estep signed a retainer agreement with Mr. Hamilton to dissolve her marriage with Mr. Raymond. Mr. Hamilton, inadvertently and without authorization from Mr. Hackney and Mr. Carroll, used a retainer form of Hackney, Hamilton & Carroll that retained solely Mr. Hamilton. No facts show Mr. Hackney or Mr. Carroll met Ms. Estep or knew of or had any involvement in her marriage dissolution. Mr. Raymond represented himself throughout the marriage dissolution.

¶4 One life insurance policy belonged to each party. Each policy named the other party as primary beneficiary. Temporary orders required maintaining the status quo. On April 16, 2004, the parties entered agreed findings of fact and conclusions of law and a dissolution decree. The decree awarded Mr. Raymond "[a]ny life insurance policies" he owned, and Ms. Estep was awarded "[a]ny life insurance policies" she owned. Clerk's Papers (CP) at 151, 154, 156. The final papers were silent regarding any redesignation of insurance policy beneficiaries. After the divorce, neither party changed the beneficiary designations.

¶5 Mr. Hamilton later began representing Mr. Raymond in an unrelated matter, until Mr. Raymond died in October 2004. The proceeds of Mr. Raymond's life insurance policy went to his estate by law, not to Ms. Estep. After Ms. Estep learned the estate would be shared equally by her two daughters with Mr. Raymond, and Mr. Raymond's other daughter, she sued Mr. Hamilton,[1] alleging negligence in failing to perfect for her the proceeds of Mr. Raymond's life insurance policy.

¶6 Mr. Hackney and Mr. Carroll were later added as parties. Ms. Estep alleged Mr. Hackney and Mr. Carroll[2]

---

[1] The suit also named Hamilton Law Offices, PLLC, and Jane Doe Hamilton as defendants.

[2] The amended complaint also named as defendants Hackney, Hamilton, and Carroll, Attorneys at Law; Jane Doe Hackney; and Jane Doe Carroll.

were vicariously liable for Mr. Hamilton's negligence. The amended complaint reframed the claim against Mr. Hamilton, alleging he failed to exercise reasonable care by failing to preserve Ms. Estep as Mr. Raymond's life insurance beneficiary. Mr. Hamilton and Mr. Hackney and Mr. Carroll moved for summary judgment.[3]

¶7 Mr. Hamilton deposed that at the temporary order stage he counseled Ms. Estep about Mr. Raymond's life insurance policy after she asked to have it maintained for her; he responded that the court could order an amount to secure her "insurable interest" in child support. CP at 216. The subject was dropped until the preparation of final papers, when Ms. Estep again asked to remain as Mr. Raymond's beneficiary. Mr. Hamilton then discussed it with Mr. Raymond, who "refused to have that in there." CP at 216.

¶8 After Mr. Raymond signed the final papers, apparently concerned about the temporary order, he asked Mr. Hamilton if he could now change policy beneficiaries. Mr. Hamilton replied, " 'Well, of course. Why[?]' " CP at 217. After explaining that the temporary order would no longer prevent a beneficiary change, Mr. Hamilton expanded:

> I asked him, would you agree to - - "This is important to [Ms. Estep]. Would you agree to leave the life insurance - - leave her name as beneficiary?"
>
> He said, "I don't think I'll agree to that at this time." That's all he said.

CP at 217.

¶9 When asked why he did not act to secure the life insurance proceeds from Mr. Raymond's policy for Ms. Estep, Mr. Hamilton deposed he had no authority: "[h]e did not agree to that. I had no way to act on it, no way to include in the decree a provision he would not agree to and would not sign if it was in there." CP at 231. Mr. Hamilton denied failing to advise Ms. Estep that a policy change would be

---

[3] Ms. Estep's summary judgment was stricken as untimely.

necessary for her to receive the benefits. Mr. Hamilton declared, "I advised [Ms. Estep] that the issue would need to be decided by a judge but she declined to pursue the issue." CP at 110.

¶10 Mr. Hamilton's expert, attorney Martin L. Salina, opined, "Mr. Hamilton's representation of Ms. Estep . . . was within the standard of care for an attorney in the same or similar circumstances, in the state of Washington." CP at 195. Mr. Salina opined that if litigated the court would at most have ordered life insurance to cover child support and maintenance obligations.

¶11 After Mr. Raymond's death, Mr. Hamilton wrote a letter and a declaration in aid of Ms. Estep to attorney Peter Moye, the attorney for Mr. Raymond's estate, that somewhat varied from his deposition. Mr. Hamilton partly declared:

> [Mr. Raymond] mentioned to me that he had continued main-taining a significant life insurance policy for the benefit of [Ms. Estep] and his question to me was whether he would violate the Decree of Dissolution or statutory law by changing beneficiaries. I answered in the negative. However, [Mr. Raymond] then smiled at me and stated that he had no one else to leave the life insurance to and, further, that he knew [Ms. Estep] would use the money to take care of his two daughters from the marriage. When [Mr. Raymond] met with me . . . concerning the [unrelated matter] [h]e then smiled and told me that he had not even changed his life insurance beneficiary because he wanted [Ms. Estep] and their daughters to be taken care of.

CP at 165.

¶12 Responding to defense questions, Ms. Estep deposed she had read the findings of fact and conclusions of law. She was aware she received her policy as separate property, and like Mr. Raymond, had to pay for it; but, both wanted her to receive his insurance proceeds, although she did not want to reciprocate. Asked for written proof, she responded, "No, because [Mr. Hamilton] said that we didn't need to change anything." CP at 314. She asserted Mr. Hamilton told her she was still Mr. Raymond's beneficiary, "[a]nd he also said

that I shouldn't have any trouble." CP at 325-26. Ms. Estep asserted she was not told about the law limiting former spouses as beneficiaries until after Mr. Raymond died. She deposed that Mr. Hamilton said after Mr. Raymond died that she could file a beneficiary's claim without any problem.

¶13 Ms. Estep's expert witness and affiant, attorney Scott Horenstein, opined, "Because Gene E. Hamilton took no action to preserve the beneficiary designation for his client, it is my opinion to a reasonable professional certainty that the representation provided by Mr. Hamilton fell below the minimum standard of care required of a Washington divorce lawyer in 2004." CP at 199. Mr. Horenstein further opined with reasonable professional certainty that Mr. Hamilton had a duty as a 2004 divorce lawyer "to preserve the life insurance beneficiary designation for his client, particularly where both parties to the divorce had stated their intent and desire that the designation be preserved after the divorce." CP at 199.

¶14 Ms. Estep's daughter, Angela Raymond, declared Mr. Raymond told her in fall 2004, "[i]f anything happens to me, your mother is the beneficiary of my life insurance. There will be enough. Your mother will take care of you." CP at 270.

¶15 Regarding Mr. Hackney and Mr. Carroll, Mr. Hamilton declared, "At no time during the course of the Estep dissolution legal proceedings did either Mr. Hackney or Mr. Carroll provide any legal services nor did I ever discuss with either of them my representation of Ms. Estep." CP at 30-31. Additionally, "[m]y representation of Ms. Estep occurred after I started my own law practice as Hamilton Law Offices, PLLC." CP at 31.

¶16 Mr. Carroll declared, "Mr. Hamilton did not discuss the Estep case with me at any time." CP at 62. He further declared, "Ms. Estep was never a client of the Hackney, Hamilton & Carroll law firm." CP at 296. Mr. Hackney declared, "Mr. Hamilton did not discuss the Estep case with me at any time." CP at 66.

¶17 Ms. Estep declared she met with Mr. Hamilton in 2002 in the offices of Hackney, Hamilton & Carroll about a divorce, and "Mr. Hamilton represented Hackney, Hamilton, & Carroll to be a partnership by the . . . business card provided and received at that time." CP at 264. Ms. Estep attached the business card to her declaration. She declared, "I was never told and never received written notice that Hackney, Hamilton, and Carroll was not a partnership." CP at 265.

¶18 The trial court granted summary judgment for all defendants; reconsideration was denied. On November 2, 2007, Ms. Estep appealed generally from the orders entered.

¶19 After the grant of summary judgment in his favor, Mr. Hamilton moved for an award of costs pursuant to CR 68. The motion was based upon a settlement offer Mr. Hamilton mailed to Ms. Estep on December 21, 2006, which she declined to accept. On December 14, 2007, the trial court awarded Mr. Hamilton all requested costs. Included in the award were the following costs, incurred beginning in January 2007: law library copying costs; deposition fees; a fee for Mr. Hamilton's expert, Mr. Salina; and airfare for Mr. Hamilton. Ms. Estep did not appeal this award of costs.

## ANALYSIS

### A. Summary Judgment

¶20 The issue is whether the trial court erred in summarily dismissing the direct and vicarious legal malpractice claims against Mr. Hamilton, and his former partners, Mr. Hackney and Mr. Carroll. Ms. Estep contends she is entitled to summary judgment on her claims for legal malpractice and vicarious liability. Alternatively, she contends material fact issues remain.

¶21 We review summary judgment grants de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

We may affirm a summary judgment grant if it is supported by any grounds in the record. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989). Summary judgment is appropriate "if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Jones*, 146 Wn.2d at 300-01. All facts, and inferences from the facts, are considered in the light most favorable to the nonmoving party. *Id.* at 300. "A material fact is one upon which the outcome of the litigation depends." *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). Fact issues may be decided as a matter of law only if reasonable minds could reach but one conclusion. *Sherman v. State*, 128 Wn.2d 164, 184, 905 P.2d 355 (1995).

■■ ¶22 To establish legal malpractice, a plaintiff must show "(1) the existence of an attorney-client relationship giving rise to a duty of care to the client, (2) act or omission in breach of the duty, (3) damages to the client, and (4) proximate causation between the breach and damages." *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 863-64, 147 P.3d 600 (2006), *review denied*, 161 Wn.2d 1011 (2007). "To comply with the duty of care, an attorney must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in [Washington]." *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992).

■■ ¶23 Proximate cause is the nexus between breach of duty and resulting injury. *Halvorsen v. Ferguson*, 46 Wn. App. 708, 719, 735 P.2d 675 (1986). We use the "but for" test to determine proximate cause. *Griswold v. Kilpatrick*, 107 Wn. App. 757, 760, 27 P.3d 246 (2001). Accordingly, "the plaintiff must demonstrate that he or she would have prevailed or at least would have achieved a better result had the attorney not been negligent." *Halvorsen*, 46 Wn. App. at 719.

■■ ¶24 "RCW 11.07.010 provides that beneficiary designations made in favor of a spouse are revoked upon

dissolution" of a marriage. *Mearns v. Scharbach*, 103 Wn. App. 498, 505, 12 P.3d 1048 (2000). This includes beneficiary designations in life insurance policies. *Id.* at 502-05. In order to maintain a beneficiary designation in favor of a former spouse after dissolution, the former spouse must be redesignated, in writing, as the beneficiary. *Id.* at 505, 508.

¶25 Mr. Hamilton represented Ms. Estep, not Mr. Raymond. Mr. Raymond declined to leave Ms. Estep as a beneficiary as part of the dissolution decree; the final papers conclusively establish this fact. While summary judgment in favor of the nonmoving party can be ordered on appeal, it is not appropriate here. *See, e.g., Wash. Ass'n of Child Care Agencies v. Thompson*, 34 Wn. App. 225, 234, 660 P.2d 1124 (1983) (nonmoving party granted summary judgment).

¶26 Mr. Hamilton deposed that he did not tell Ms. Estep no change was necessary in order for her to receive Mr. Raymond's life insurance proceeds, while Ms. Estep deposed the opposite. Even so, Ms. Estep fails to establish proximate cause for her loss of Mr. Raymond's life insurance proceeds. *See Smith*, 135 Wn. App. at 864-65. Ms. Estep merely speculates what may have been the outcome of divorce litigation had she elected to litigate rather than agree to final papers; thus, she fails the "but for" test.

¶27 A party may litigate to establish insurance beneficiary status. *See, e.g., In re Marriage of Morrow*, 53 Wn. App. 579, 583, 589-90, 770 P.2d 197 (1989) (husband ordered to obtain life insurance to secure lifetime maintenance award). Here, Ms. Estep provides no evidence she would have prevailed. Her expert, Mr. Horenstein, did not opine on the subject. On the other hand, Mr. Hamilton's expert, Mr. Salina, declared, "Due to the limited amount of . . . spousal maintenance, it would not be unusual for insurance not to be ordered on these facts." CP at 196. For the same reason, her legal malpractice claim fails. *Smith*, 135 Wn. App. at 864-65. Therefore, summary judgment in favor of Mr. Hamilton was appropriate.

¶28 Regarding Ms. Estep's claims against the former partners, a partnership is generally liable for a tort committed by a partner in the course of partnership business, and all partners are liable for partnership obligations. RCW 25.05.120, .125. Ms. Estep contends summary judgment for her is proper based on vicarious liability because she knew of the partnership before it dissolved and she did not receive notice of partnership dissolution. Further, she argues Mr. Hamilton acted as though he had authority by using a partnership retainer form and working in the old partnership location. No material fact issues remain, contrary to her alternative theory arguments.

¶29 Essential to a principal's vicarious liability is some negligence by the alleged agent. Above we reasoned Mr. Hamilton was not negligent, so her vicarious liability founded on apparent authority fails. We discuss apparent authority as an alternative ground to affirm. Ms. Estep has the burden of establishing apparent authority. *State v. French*, 88 Wn. App. 586, 595, 945 P.2d 752 (1997). "An agent's apparent authority to bind a principal depends upon the objective manifestations of the principal to a third person." *Id*. Ms. Estep's subjective beliefs must be objectively reasonable. *King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994). None is shown here.

¶30 While Ms. Estep met with Mr. Hamilton and received his business card when Mr. Hamilton was a partner with Mr. Hackney and Mr. Carroll, she did not retain Mr. Hamilton until after the partnership dissolved. Ms. Estep points to no acts of Mr. Hackney or Mr. Carroll after August 7, 2003 that would lead a reasonable person to believe Mr. Hamilton was acting with the apparent authority of his former partners. *See French*, 88 Wn. App. at 595; *King*, 125 Wn.2d at 507. Neither Mr. Carroll nor Mr. Hackney acted toward Ms. Estep to give Mr. Hamilton apparent authority use of the retainer form. *See French*, 88 Wn. App. at 595 (stating, "[a]pparent authority cannot be inferred from the acts of the agent" (citing *Mauch v. Kissling*, 56 Wn. App. 312, 316, 783 P.2d 601 (1989))). Mr.

Hamilton's office location is immaterial, considering that Ms. Estep fails to show any act by the former partners misleading her.

## B. Costs

¶31 Ms. Estep contends the trial court erred in awarding costs to Mr. Hamilton. Mr. Hamilton argues the order awarding costs was not properly designated for appeal because Ms. Estep filed a notice of appeal regarding only the trial court's summary judgment and reconsideration orders. However, "[a] party may obtain review of a trial court decision on attorney fees, costs and litigation expenses in the same review proceeding as that challenging the judgment *without filing a separate notice of appeal or notice for discretionary review*." RAP 7.2(i) (emphasis added). Thus, the trial court's December 14, 2007 cost award is properly before this court for review.

¶32 "Washington follows the American rule concerning attorneys' fees and litigation expenses." *Wagner v. Foote*, 128 Wn.2d 408, 416, 908 P.2d 884 (1996). "The American rule states fees and expenses are not recoverable absent specific statutory authority, contractual provision, or recognized grounds in equity." *Id.*

¶33 The standard of review for an award of costs involves a two-step process. First, whether a statute, contract, or equitable theory authorizes the award is a matter of law subject to de novo review. *Mehlenbacher v. DeMont*, 103 Wn. App. 240, 244, 11 P.3d 871 (2000); *Tradewell Group, Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). Second, if such authority exists, the amount of the award is subject to the abuse of discretion standard. *Tradewell Group, Inc.*, 71 Wn. App. at 127.

¶34 "CR 68 provides for an award of costs to a defendant in cases where the defendant has made an offer of judgment to the plaintiff which was larger than the judgment ultimately obtained." *Tippie v. Delisle*, 55 Wn. App. 417, 420, 777 P.2d 1080 (1989) (citing *Jordan v. Berkey*,

26 Wn. App. 242, 245, 611 P.2d 1382 (1980)). CR 68 provides, in relevant part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him . . . . An offer not accepted shall be deemed withdrawn . . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

¶35 The rule is not limited to cases that proceed to trial. *See Sims v. KIRO, Inc.*, 20 Wn. App. 229, 237-38, 580 P.2d 642 (1978) (concluding the defendant was entitled to costs pursuant to CR 68, where the defendant obtained summary judgment after making a settlement offer).

¶36 Here, after making a settlement offer that Ms. Estep declined to accept, Mr. Hamilton obtained summary judgment. Thus, pursuant to CR 68, Mr. Hamilton is entitled to costs incurred after he made the settlement offer, December 21, 2006.

¶37 Ms. Estep first contends the trial court erred in awarding costs for depositions not prorated or filed. A party that prevails on a summary judgment motion may recover costs "incurred in taking depositions specifically considered by the trial court . . . ." *Herried v. Pierce County Pub. Transp. Benefit Auth. Corp.*, 90 Wn. App. 468, 476, 957 P.2d 767 (1998) (citing *Gearheart v. Shelton*, 23 Wn. App. 292, 595 P.2d 67 (1979)). Here, the trial court awarded costs for several depositions. CP at 428, 432-34. Each one is addressed in turn below.

¶38 First, the trial court awarded costs for the deposition of Ms. Estep. In its order granting Mr. Hamilton's motion for summary judgment, the trial court indicated it considered Ms. Estep's deposition. In addition, the entire deposition was made part of the record. Thus, because the trial court specifically considered Ms. Estep's deposition, it did not err in including it in the cost award. *See Herried*, 90 Wn. App. at 476 (citing *Gearheart*, 23 Wn. App. 292).

¶39 The trial court also awarded costs for the depositions of Peter Moye and Angela Raymond. However, neither of these depositions were made part of the record, nor were they considered by the trial court in granting Mr. Hamilton's motion for summary judgment. Accordingly, the trial court erred in including the fee for these depositions in the cost award. *See id.* (citing *Gearheart*, 23 Wn. App. 292).

¶40 In addition, the trial court awarded costs for the deposition of Mr. Hamilton. In its order granting Mr. Hamilton's motion for summary judgment, the trial court indicated it considered Mr. Hamilton's deposition. In addition, the entire deposition was made part of the record. Thus, because the trial court specifically considered Mr. Hamilton's deposition, it did not err in including it in the cost award. *See id.* (citing *Gearheart*, 23 Wn. App. 292).

¶41 The trial court also awarded costs for unspecified depositions in the amount of $162.65. Because the names of the persons deposed are not specified, there is no way to tell if they were specifically considered by the trial court. Accordingly, the trial court erred in including this amount in the cost award. On remand, the trial court may include this amount if it can identify the persons deposed and determine the trial court specifically considered the depositions in its summary judgment ruling for Mr. Hamilton. *See id.* (citing *Gearheart*, 23 Wn. App. 292).

¶42 Finally, the trial court awarded costs for the deposition of Scott Horenstein. In its order granting Mr. Hamilton's motion for summary judgment, the trial court indicated it considered excerpts from Mr. Horenstein's deposition. Only a portion of Mr. Horenstein's deposition was included in the record. Mr. Hamilton is entitled to recover costs only for the portion of Mr. Horenstein's deposition the trial court specifically considered. *See id.* (citing *Gearheart*, 23 Wn. App. 292). Accordingly, on remand, the trial court must be satisfied the cost award with respect to

Mr. Horenstein's deposition covers only the portion of the deposition actually considered in the summary judgment ruling.

¶43 Second, Ms. Estep contends the trial court erred in awarding costs for Mr. Hamilton's airfare.

¶44 RCW 4.84.010 lists the costs available to a prevailing party. Included are "[s]tatutory attorney and witness fees." RCW 4.84.010(6). With respect to witness fees, RCW 4.84.090 authorizes the prevailing party to recover witness mileage costs. *See also, e.g., Kiewit-Grice v. State,* 77 Wn. App. 867, 874, 895 P.2d 6 (1995) (acknowledging "RCW 4.84.090 and RCW 2.40.010 authorize the award of witness mileage costs"). However, the statute provides, "no fees or mileage for any witness shall be taxed in the cost bill unless they shall have reported their attendance at the close of each day's session to the clerk in attendance at such trial." RCW 4.84.090. Additionally, in general, a party who is also a witness is not entitled to mileage costs. *See Van Nostern v. Richey & Gilbert Co.,* 2 Wn.2d 663, 667, 99 P.2d 608 (1940) (stating "witness' fees and mileage should not be allowed to the respondents, as each was called as a witness for himself as well as for the other plaintiff"); *Univ. Plumbing & Heating Co. v. Natches Hotel Co.,* 177 Wash. 548, 551, 32 P.2d 545 (1934) (upholding award of witness fees to presidents of respondent corporations; they were "witnesses who were not parties to the action"); *Noon v. Mironski,* 58 Wash. 453, 456, 108 P. 1069 (1910) (upholding award of witness fees to respondent's wife, who not named as a party, but was subpoenaed as a witness).

¶45 Here, there is no indication in the record that Mr. Hamilton appeared in court in connection with the taxed airfare, or reported to the court clerk, as required by RCW 4.84.090. Further, as a party to the action, Mr. Hamilton is not entitled to mileage costs. Accordingly, the trial court erred in awarding costs for Mr. Hamilton's airfare.

¶46 Third, Ms. Estep contends the trial court erred in awarding costs for Mr. Salina's expert witness fee.

¶47 RCW 4.84.010 does not authorize expert witness fees in an award of costs to the prevailing party. Moreover, our Supreme Court has recognized there are no grounds for awarding expert witness fees as costs. *See Wagner*, 128 Wn.2d at 417-18; *Fiorito v. Goerig*, 27 Wn.2d 615, 620, 179 P.2d 316 (1947). Specifically, "[w]here an expert is employed and is acting for one of the parties, it is not proper to charge the allowance of fees for such expert against the losing party as a part of the costs of the action." *Fiorito*, 27 Wn.2d at 620. Accordingly, the trial court erred in awarding costs for Mr. Salina's expert witness fee.

¶48 Finally, Ms. Estep contends the trial court erred in awarding law library copying costs.

¶49 Photocopying costs are not awardable costs under RCW 4.84.010. *In re Marriage of Van Camp*, 82 Wn. App. 339, 343, 918 P.2d 509 (1996). In addition, there are no "recognized grounds in equity" supporting an award of photocopying costs. *Wagner*, 128 Wn.2d at 416. Accordingly, the trial court erred in awarding law library copying costs to Mr. Hamilton.

¶50 In sum, the trial court did not err in awarding costs for the depositions of Ms. Estep and Mr. Hamilton. The trial court did, however, err in awarding costs for the depositions of Mr. Moye and Ms. Raymond, Mr. Hamilton's airfare, Mr. Salina's expert witness fee, and law library copying costs.

¶51 Further, the trial court erred in awarding costs for the unspecified depositions and any portion of Mr. Horenstein's deposition not specifically considered in its summary judgment ruling. On remand, the trial court must determine whether it considered the unspecified depositions in its summary judgment ruling for Mr. Hamilton, and whether the cost award for Mr. Horenstein's deposition is limited to the portion of the deposition the trial court specifically considered.

¶52 Summary judgment orders affirmed; order awarding costs reversed and remanded.

KULIK, A.C.J., and KORSMO, J., concur.

Reconsideration granted and opinion modified January 20, 2009.

Reconsideration denied February 27, 2009.

Review denied at 166 Wn.2d 1027 (2009).