2017 FEB -6 AM 9: 50



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| GLOGOWSKI LAW FIRM, PLLC, | ) | No. 74266-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CITY FIRST MORTGAGE SERVICES, LLC, | ) | |
| | ) | FILED: February 6, 2017 |
| Appellant. | ) | |

APPELWICK, J. — Glogowski sued City First for its legal fees, and City First counterclaimed for legal malpractice. The trial court dismissed the legal malpractice claim on summary judgment. We reverse and remand for trial.

## FACTS

Glogowski Law Firm PLLC sued City First Mortgage Services LLC for breach of contract after City First failed to pay Glogowski for legal services. City First hired Glogowski to defend it in a lawsuit brought by Donald and Beth Collings. Katrina Glogowski was the attorney primarily responsible for the case.[1]

The Collingses contacted City First after receiving a flier advertising a program for people with credit problems. Collings v. City First Mortg. Servs., LLC, 177 Wn. App. 908, 914, 317 P.3d 1047 (2013). The Collingses were concerned

---

[1] For clarity, we refer to Glogowski Law Firm PLLC as Glogowski, and Katrina Glogowski, the attorney who handled the Collings case, as Ms. Glogowski.

about falling behind in their payments on their home. Id. Beth Collings first spoke with Gavin Spencer, an employee at a City First Branch in Utah, who assisted her in applying for a loan over the phone. Id. Spencer informed the Collingses that the loan had not been approved, but suggested that his manager might be able to help them. Id.

Spencer introduced the Collingses to Paul Loveless and Andrew Mullen, City First branch managers. Id. Loveless suggested a plan: he would buy the Collingses' home for its appraised value, take out a mortgage on the home, and lease it back to them. Id. at 915. The Collingses agreed, on the condition that the lease would prohibit Loveless from refinancing the home and encumbering it with a home equity line of credit. Id. In accordance with the agreement, Loveless took title to the home and executed a mortgage with City First. Id.

Two years later, the Collingses discovered that Loveless had refinanced the loan with City First and taken out a home equity line of credit. Id. Loveless had failed to make payments, and a foreclosure action had commenced. Id. at 915-16. Once the Collingses learned of the foreclosure action, they stopped making lease payments to Loveless. Id. at 915.

The Collingses sued City First, Loveless, Mullen, and Spencer in March 2009. Id. They alleged equity skimming, a civil conspiracy, usury, and violations of the Residential Landlord-Tenant Act of 1973,[2] the Credit Services Organizations

---

[2] Chapter 59.18 RCW.

2

Act (CSOA),[3] and the Consumer Protection Act.[4] They sought damages and injunctive relief.

Loveless defaulted. Collings, 177 Wn. App. at 916. It was undisputed that his scheme constituted illegal equity skimming. Id. After a trial, the jury found that Loveless, Mullen, and City First were liable to the Collingses. Id. It determined that Loveless and City First were liable for $40,311 in compensatory damages and imposed $80,622 in punitive damages against the two under the CSOA. Id. It also imposed $8,000 in punitive damages against Mullen.[5] Id. The court entered judgment against City First in the amount of $120,933. CP 1476-77.

City First appealed. Id. at 917. It argued that there was insufficient evidence of its liability on all of the Collingses' claims. Id. at 923. This court concluded that because City First did not propose a special verdict form to clarify the basis for the jury's verdict, the verdict would stand so long as at least one of the Collingses' claims was supported by the evidence. Id. at 925. It held that there was sufficient evidence to support City First's vicarious liability for Loveless, who defaulted on all of the claims. Id.

Glogowski filed the instant suit due to City First's failure to pay for the legal services rendered in Collings. City First asserted a counterclaim for legal

---

[3] Chapter 19.134 RCW.
[4] Chapter 19.86 RCW.
[5] The jury verdict form required the jury to answer a number of questions about liability and damages. The jury found that Loveless and Mullen were liable to the Collingses on their claims. It found that City First was liable for the acts of Loveless, Mullen, and Spencer. It also determined that City First was "independently liable to the Collingses for their claims." The jury also specifically found that Loveless, Mullen, and City First were liable to the Collingses for violating the CSOA.

3

malpractice. Glogowski moved for summary judgment on the counterclaim. It argued that City First could not prove that Ms. Glogowski's conduct proximately caused the adverse verdict in the Collings case.

The court originally denied Glogowski's motion for summary judgment. Glogowski filed a motion for reconsideration, providing additional authority on the propriety of deciding proximate cause on summary judgment. The trial court granted this motion. It denied City First's subsequent motion for reconsideration. City First appeals.

## DISCUSSION

City First asserts that the trial court erred in dismissing its legal malpractice claim. It argues that it created genuine issues of material fact on the issue of proximate cause that preclude summary judgment. City First contends that an issue remains as to whether, had Ms. Glogowski raised exemption from the CSOA or the Consumer Loan Act (CLA) as a defense, the jury would have imposed punitive damages.

This court reviews a summary judgment order de novo. Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012). The court reviews the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Klinke v. Famous Recipe Fried Chicken, Inc., 94 Wn.2d 255, 256, 616 P.2d 644 (1980). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300-01, 45 P.3d 1068 (2002). A material fact is one upon which the outcome

4

of the litigation depends, either in whole or in part. VersusLaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319, 111 P.3d 866 (2005). The court should grant summary judgment when reasonable minds could reach only one conclusion. Id.

There are four elements of a legal malpractice claim: (1) an attorney-client relationship existed, (2) the lawyer had a duty, (3) the lawyer failed to perform the duty, and (4) the lawyer's negligence was a proximate cause of the damage to the client. Halvorsen v. Ferguson, 46 Wn. App. 708, 711-12, 735 P.2d 675 (1986). Attorneys have a duty to exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer practicing in this jurisdiction. Id. at 712.

Proximate cause requires there to be a nexus between the attorney's breach of duty and the resulting injury. Estep v. Hamilton, 148 Wn. App. 246, 256, 201 P.3d 331 (2008). To establish proximate cause, the client must prove that, but for the attorney's negligence, he or she would have prevailed or at least would have achieved a better result. Halvorsen, 46 Wn. App. at 719. Generally, proximate cause is a question for the jury. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006). But, the court can decide proximate cause as a matter of law if reasonable minds could not differ. Id.

City First argues that the trial court erred in dismissing its legal malpractice claim based on proximate cause. City First argues that Ms. Glogowski failed to raise defenses under the CSOA and CLA, which would have exempted City First from liability. Therefore, the question before us is whether City First could have

received a more favorable outcome if Ms. Glogowski had raised one of these defenses.

Among other things, the CSOA prohibits those who attempt to assist borrowers in preventing or delaying foreclosure from making untrue or misleading representations. RCW 19.134.020, .010(2). It defines a "credit services organization" as

> [A]ny person who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can or will sell, provide, or perform, in return for the payment of money or other valuable consideration any of the following services:
>
> (i) Improving, saving, or preserving a buyer's credit record, history, or rating;
>
> (ii) Obtaining an extension of credit for a buyer;
>
> (iii) Stopping, preventing, or delaying the foreclosure of a deed of trust, mortgage, or other security agreement; or
>
> (iv) Providing advice or assistance to a buyer with regard to [any of the above].

RCW 19.134.010(2)(a). The CSOA also specifies what a credit services organization does not include. RCW 19.134.010(2)(b). At issue here is the exemption of,

> Any person authorized to make loans or extensions of credit under the laws of this state or the United States who is subject to regulation and supervision by this state or the United States or a lender approved by the United States secretary of housing and urban development for participation in any mortgage insurance program under the national housing act.

RCW 19.134.010(2)(b)(i).

City First asserts that it is exempt from the CSOA due to this provision, and therefore it should not have been subject to the Collingses' CSOA claim. City First

6

contends this is so, because City First has held and continuously maintained a license from the Federal Housing Authority (FHA) since at least 1997. And, City First is directly supervised by a federal regulator: the United States Department of Housing and Urban Development (HUD). City First asserts that as its licensees, Loveless and Mullen are also supervised by HUD, and therefore exempt as well.

At the underlying trial, in City First's motion for judgment as a matter of law, Ms. Glogowski argued that City First was exempt from the CSOA. But, she limited her argument to the exemption for " 'any person authorized to make loans or extensions of credit <u>under the laws of this state</u>.' " (Quoting RCW 19.134.010(2)(b)(i)). She quoted this portion of RCW 19.134.010(2)(b)(i), arguing that because City First is licensed by the Department of Financial Institutions (DFI) as a consumer loan company, it is exempt from the CSOA. On appeal, the <u>Collings</u> court rejected that argument. <u>See</u> 177 Wn. App. at 929-30. It determined that DFI regulations indicate that every branch must be licensed in the state to be authorized to make loans or extensions of credit under the laws of Washington. <u>See</u> <u>id.</u> at 930. The City First branch at issue was not licensed in the state. <u>Id.</u>

No mention was made in the trial motion to the language that immediately follows in RCW 19.134.010(2)(b)(i): "or the United States who is subject to regulation and supervision by this state or the United States or a lender approved by the United States secretary of housing and urban development for participation in any mortgage insurance program under the national housing act." This language creates an exemption for entities that are authorized to make loans and extensions of credit under federal law and are regulated by a federal entity. Yet,

7

Ms. Glogowski did not argue that City First was entitled to this exemption. Nor did she specifically object to jury instruction 19, which summarized the CSOA exemption as, "A 'credit services organization' does not include a person or entity authorized to make loans under the laws of the state of Washington."[6] Consequently, this instruction did not mention that an entity may be exempt if it is authorized to make loans under federal law. And, the Court of Appeals had no reason to consider a federal law exemption in its opinion.

In the malpractice action, City First produced a declaration of Brian Hunt as support for an exemption based on regulation at the federal level. Hunt is general counsel for City First. He stated that the information in his declaration was based on his own personal knowledge. This declaration states that City First has been continuously licensed by the FHA since 1997. And, City First is directly supervised by HUD, so it is an approved HUD and FHA lender. It also states that City First is a licensed mortgage broker. And, it provides that Loveless and Mullen were HUD and FHA approved lenders as licensees of City First.[7] While not conclusive, these statements create a genuine issue of material fact on City First's status under the CSOA.

---

[6] Ms. Glogowski generally objected to a list of the Collingses' proposed jury instructions, including instruction 19. But, she did not provide any grounds for the objection. CR 51(f) requires counsel to "state distinctly the matter to which counsel objects and the grounds of counsel's objection" to a particular jury instruction. Where counsel does not clarify the reasons for the objection, a reviewing court will not consider the objection. Walker v. State, 121 Wn.2d 214, 217, 848 P.2d 721 (1993). Indeed, this court determined that City First did not take exception to instruction 19. Collings, 177 Wn. App. at 930.

[7] Unlike the other statements in Hunt's declaration, this comment is a legal conclusion. Thus, we do not consider this portion of the declaration in our analysis.

Glogowski argues that even if Ms. Glogowski had raised the exemption defense, the outcome would not have changed, because City First was found vicariously liable for the acts of Loveless and Mullen. It contends that because individuals are not federally regulated, Loveless and Mullen could not have asserted the exemption defense themselves. Consequently, City First would have still been found vicariously liable for Loveless's and Mullen's CSOA violations.

But, a corporation necessarily acts through its officers, directors, employees, and other agents. Diaz v. Wash. State Migrant Council, 165 Wn. App. 59, 76, 265 P.3d 956 (2011). Where a corporation's agents act within the scope of their authority, their actions are the actions of the corporation. Mauch v. Kizzling, 56 Wn. App. 312, 316, 783 P.2d 601 (1989). The only potential agents of City First who were found liable under the CSOA were Loveless and Mullen. Therefore, had Ms. Glogowski raised this defense, she would have had to argue that Loveless and Mullen were acting within the scope of their authority and therefore their actions were actually those of City First itself. Under this legal theory, City First, Loveless, and Mullen could have been determined to be exempt from the CSOA. Or, if Loveless and Mullen were found not to be agents of City First acting in the scope of their authority, they might still have been found liable under the CSOA. But, the determination of vicarious liability made in the Collings case would not control, because the question for the jury would have changed if City First was exempt. The outcome would not necessarily have been the same.

Viewing Hunt's declaration in the light most favorable to City First, we conclude that a genuine issue of material fact exists as to whether City First is

exempt from the CSOA. If Ms. Glogowski had raised the issue of exemption as a federally licensed and regulated lender, the outcome of the Collings case may have been different. The jury awarded $80,622 in punitive damages under the CSOA. Punitive damages were not available under any other statute or theory at issue. Had City First been exempt from the CSOA, the jury would not have been able to award these punitive damages.[8] Ms. Glogowski's failure to assert the federal exemption from the CSOA may have been the proximate cause of at least some damages incurred by City First. Therefore, the trial court erred in granting summary judgment in favor of Glogowski.[9]

We reverse and remand for proceedings consistent with this opinion.

WE CONCUR:

---

[8] For purposes of this appeal, we need not and do not address whether the CSOA exemption would preclude any liability for City First.

[9] Given the conclusion that City First's argument relating to the CSOA should have barred summary judgment, we need not address City First's argument relating to the CLA.