[No. 46706-9-I.   Division One.   July 23, 2001.]

JOYCE GRISWOLD, *Individually and as Personal Representative, Appellant*, v. RICHARD B. KILPATRICK, ET AL., *Respondents.*

*Roger K. Anderson*, for appellant.

*Stephen J. Sirianni* (of *Sirianni & Youtz*), for respondents.

BECKER, J. — A plaintiff settled a medical malpractice suit for $1.2 million. She then sued her attorney on the theory that the settlement figure would have been higher but for the attorney's delay in initiating settlement negotiations. Because the evidence adduced to prove this theory was entirely speculative, the trial court properly dismissed the case on summary judgment.

In November of 1992, Virgil Griswold underwent a surgical procedure, a carotid endarterectomy, at the University of Washington Medical Center in Seattle. The purpose of this procedure is to open up the carotid artery which supplies oxygenated blood to the brain. Within 24 hours of the surgery, Griswold had a stroke, recognized as a potential complication of the procedure. The stroke caused brain

damage and paralysis in Griswold's left side.

In 1993, Griswold's wife, Joyce, hired attorney Richard Kilpatrick to represent the couple in a claim for medical malpractice against the University of Washington Medical Center and the individual surgeons. They alleged that the University medical staff was negligent by not acting immediately upon detection of neurological abnormalities in the hours following surgery. Kilpatrick told the Griswolds that he would want to bring in another attorney to act as lead counsel, subject to their approval, and they agreed. They signed a fee agreement in the fall of 1993. Griswold underwent rehabilitation treatment, both inpatient and outpatient, at the University for several months thereafter, and the family instructed Kilpatrick not to take any steps against the University while he was under the University's care.

By the spring of 1994, Griswold had been discharged from the University's care. Kilpatrick obtained his medical records from the University. In November, Kilpatrick filed a claim for damages with Washington's Department of Risk Management. In the summer of 1995, after unsuccessfully trying to persuade other attorneys to take the case, Kilpatrick associated Mark Alan Johnson as lead counsel. Johnson filed suit on behalf of the Griswolds a few months later. He associated attorney James Holman and together they expeditiously retained expert witnesses and conducted discovery.

In June 1996, Virgil Griswold suffered a heart attack.

In September 1996, mediation produced a settlement agreement. The Griswolds released the defendants in exchange for $1.2 million.

Virgil Griswold died in January 1997. In 1999 Joyce Griswold filed a legal malpractice suit against Kilpatrick on behalf of herself and her husband's estate. She alleged that the case would have settled for a larger amount if Kilpatrick had prosecuted the case more energetically, so that it would have been in a settlement posture before Mr.

Griswold had the heart attack. Kilpatrick moved for summary judgment. The trial court granted Kilpatrick's motion and dismissed the case. Griswold appeals.

■ When reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court considers all facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437.

■ Liability for legal malpractice, as for other torts, requires proof of duty, breach of duty, causation, and damage. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). Kilpatrick's motion for summary judgment placed at issue only the element of causation. Therefore, for purposes of summary judgment, it is assumed that Kilpatrick breached the standard of care by delay in the prosecution of the case. The inquiry is whether the record contains sufficient evidence to support a finding that the delay proximately caused damage to the Griswolds.

■ In legal malpractice actions, proximate cause is determined by the "but for" test. *Daugert v. Pappas*, 104 Wn.2d 254, 263, 704 P.2d 600 (1985). Griswold argues that but for the delay, the case would have settled before her husband's heart attack, and for a considerably larger sum.

■ Her proof on both these points is insufficient. To prove that the case would have settled before the June 1996 heart attack, she simply assumes the result: that the University would have approached settlement negotiations in exactly the same way, but earlier, if only the preparation of the plaintiff's case had been completed earlier. Griswold, who bears the burden of proof, offers no declarations from University personnel stating that the University would have been ready and willing to mediate at an earlier date than it actually did.

Griswold also lacks proof that her husband's heart attack reduced the settlement value of the case. The only evidence in support of this assertion is the testimony of lawyer Gerald Palm, the Griswolds' expert witness. Palm offered an opinion that the case was worth at least $1.5 million before the heart attack. He conceded in deposition that he had not been involved in any factually similar cases. He was unable to point to any other settlement or verdict as providing a foundation for his opinion. The only basis he identified for his opinion was his general experience in litigation of medical malpractice cases.

It is undisputed that the $1.2 million exhausted the settlement authority of the University's negotiating team at the mediation. Palm had no information indicating that the University was willing to settle the case for a larger amount of money before the heart attack. Palm said it was "common sense" that the heart attack reduced Mr. Griswold's life expectancy, but he could not say by how much. Asked how he derived the figure of $300,000, Palm explained that it was based on his "knowledge and experience," not on an "arithmetic process." Asked why the difference caused by the heart attack was $300,000, as opposed to $100,000 or $500,000, Palm said that he thought $100,000 was too low but that he "could have said $500,000." Although he said that $1.5 million was the "reasonable settlement value" of the case before the heart attack, he could not say that it would have been malpractice if Griswold's attorneys had recommended acceptance of a $1.2 million offer before the heart attack occurred.

"Where there is no basis for the expert opinion other than theoretical speculation, the expert testimony should be excluded." *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 103, 882 P.2d 703, 891 P.2d 718 (1994). The factual, informational, or scientific basis of an expert opinion, including the principle or procedures through which the expert's conclusions are reached, must be sufficiently trustworthy and reliable to remove the danger of specula-

tion and conjecture and give at least minimal assurance that the opinion can assist the trier of fact. *Sanchez v. Haddix*, 95 Wn.2d 593, 627 P.2d 1312 (1981). Our courts have excluded expert opinions that are based on unsubstantiated assumptions. *See Bellevue Plaza, Inc. v. City of Bellevue*, 121 Wn.2d 397, 418, 851 P.2d 662 (1993) (it was "sheer speculation to assume that every single non-residential property in all of downtown Bellevue will be developed into the largest and highest permissible office building."). The record reveals no substance behind Palm's opinion that the case would have settled for $300,000 more before the heart attack. His opinion is speculative and conclusory and for that reason is inadmissible to create an issue of material fact.

As explained in expert testimony submitted by Kilpatrick, the timing of the settlement process is typically affected by many variables other than the plaintiff's attorney's readiness to negotiate. Cases from other jurisdictions confirm that it is difficult to escape the realm of speculation when trying to prove that delay by plaintiff's counsel in settling a case caused harm to the plaintiff. *See, e.g., Thompson v. Halvonik*, 36 Cal. App. 4th 657, 43 Cal. Rptr. 2d 142 (1995). In that case a speech therapist testified that the plaintiff regressed when his therapy was stopped due to lack of funds, and an economist testified that the 1991 settlement would have been worth more if achieved three years earlier, due to changes in interest rates and underwriting. Summary judgment for the attorney was nevertheless affirmed because the evidence did not "demonstrate that but for the respondents' delay, appellant's underlying case would have settled at all, let alone at an earlier date, for the same amount, or with the same structure." *Thompson*, 43 Cal. Rptr. 2d at 146. *See also Brooks v. Brennan*, 255 Ill. App. 3d 260, 625 N.E.2d 1188 (1994); *Sanders v. Townsend*, 509 N.E.2d 860 (Ind. Ct. App. 1987), *affirmed in relevant part*, 582 N.E.2d 355 (Ind. 1991); *cf. Becker v. Julien, Blitz & Schlesinger, P.C.*, 95 Misc. 2d 64, 406 N.Y.S.2d 412, 413-14 (Sup. Ct. 1977) (a cause of action for

legal malpractice in settling a case, though difficult to establish, can be made out "if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse.").

In summary, Palm's conclusory opinion that the claim would have settled for $1.5 million before the heart attack is not sufficient to raise a genuine issue of material fact on the element of proximate "but for" causation. The order granting summary judgment to Kilpatrick is affirmed.

AGID, C.J., and APPELWICK, J., concur.