IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SUSAN E. SHOLLY, LORNA L. STEWART, and LINDA A. MULLINS, | ) ) ) | No. 70434-6-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| CYNTHIA WORTH and JOHN WAY and WORTH LAW GROUP, P.S., INC., a Washington Professional Services Corporation, d/b/a WORTH LAW GROUP, | ) ) ) ) ) ) | UNPUBLISHED OPINION

FILED: September 22, 2014 |
| Respondents. | ) ) ) | |

BECKER, J. — Three sisters appeal the summary judgment dismissal of their legal malpractice claim against the attorneys who represented them in a trust accounting dispute with their stepmother and stepsister. The trial court granted summary judgment for the attorneys. We affirm.

FACTS

When James Stewart and Dorothy Dunson married in 1982, Dunson had a daughter, Barbara Dunson, and Stewart had three daughters: Susan Sholly, Lorna Stewart, and Linda Mullins. In 1996, Stewart and Dunson entered an agreement creating the Stewart-Dunson Living Trust, naming themselves as trustees and primary beneficiaries of the trust, and granting their separate and community property to the trust. Upon the death of the first grantor to die, the

trust agreement directs the surviving grantor to divide the trust, placing the separate property of the deceased grantor in a separate credit trust to be used for the care of the survivor if other funds are insufficient, and to be distributed to the deceased grantor's children upon the death of the survivor.

Stewart died on March 5, 2009. Stewart's will named Dunson as his personal representative and directed the transfer of his separate and community property to the trust. In April 2009, Dunson named her daughter Barbara as trustee of the trust.

Prior to his death, Sholly had assisted her father in managing his finances. After initially assisting Dunson in gathering financial information for the management of Stewart's estate and the trust, Sholly became concerned about Dunson's and Barbara's intentions regarding the management of the credit trust. In April 2009, Sholly hired Cynthia Worth and John Way of the Worth Law Group (hereinafter "Worth") to assist her in negotiating with Dunson and her attorney regarding Stewart's estate and the trust. Sholly provided all the information she had regarding her father's finances to Worth. In November 2009, after disagreements arose over items of personal property and the need for an accounting of the trust's assets, Worth filed a petition under Washington's Trust and Estate Dispute Resolution Act (TEDRA), seeking an accounting and the appointment of an independent trustee. In December 2009, Sholly's sisters also engaged Worth to represent them in the TEDRA proceeding.

In January 2010, the parties participated in mediation. The parties agreed to settle on condition that the trust transfer $1.1 million in assets and $25,000 in

2

cash for attorney fees to the three sisters. With the addition of an IRA (individual retirement account), a coin collection, certain bank accounts, and various items of personal property, the sisters received more than $1.3 million as a result of the settlement. On January 19, 2010, the parties filed a CR 2A settlement agreement to close the TEDRA proceeding.

In August 2011, the sisters filed a complaint for legal malpractice against Worth. The complaint alleges that the attorneys breached their duty of care by encouraging the sisters to settle the TEDRA action without conducting discovery to "ascertain the true amount of plaintiffs' rights to the trusts and estate of their father, James Stewart." As to their claim of injury, the complaint alleges that the sisters "discovered that their rights to the estate and trust assets left to them by their father likely exceeded the amount they were advised to settle for by defendants."

In February 2013, Worth moved for summary judgment dismissal, arguing that the sisters could not establish a breach of the standard of care, damage, or proximate cause. In support of the motion, Worth provided the declaration of Mark Newton, an expert in forensic accounting and economic evaluations. In his declaration, Newton listed all documents and financial records he reviewed to support his independent valuation of Stewart's separate property and half of the community property at the time of Stewart's death at $1,479,530. Based on his review of the report prepared by the sisters' financial expert, Neil Beaton, and the supporting documents in Beaton's file, Newton stated,

> I can find no records that support Mr. Beaton's conclusion that Mr. Stewart's separate property and his portion of the community

property he shared with his wife of 26 years, Dorothy Dunson, was worth $2.1 million at the date of his death in March 2009. Furthermore, I have been provided thousands of other documents related to the estate (identified above) and can find no indication that Mr. Stewart's assets were valued at $2.1 million in March 2009.

In response, the sisters referred to Beaton's report and their own declarations to demonstrate that they "lost a substantial amount of probable inheritance by settling without knowing the amount of assets their father possessed at the time of his death." They claimed that the differences between Beaton's and Newton's analyses raised a question of fact for trial. In their declarations, the sisters state that Worth did not advise them that Dunson had not produced all the financial information regarding the assets in the trust and Stewart's estate, that they could leave the mediation without settling the case, or that the mediator did not have the power to force a settlement.

The trial court granted summary judgment dismissal. The sisters appeal.

ANALYSIS

We review an order of summary judgment de novo, engaging in the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); Versuslaw, Inc. v. Stoel Rives, LLP, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005), review denied, 156 Wn.2d 1008 (2006). The initial burden is on the moving party to show that there are no genuine issues of material fact. Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276

(2006). "Once the moving party has met its burden, the burden shifts to the nonmoving party to present admissible evidence demonstrating the existence of a genuine issue of material fact." Pacific Nw. Shooting Park, 158 Wn.2d at 351.

To establish a case of legal malpractice, the sisters must prove (1) the existence of an attorney-client relationship which gives rise to a duty of care, (2) an act or omission by Worth that breaches the duty of care, (3) damage to the sisters, and (4) proximate causation between Worth's breach of duty and the damages incurred. Hizey v. Carpenter, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). To avoid dismissal, the sisters must show an issue of material fact as to each element. Craig v. Wash. Trust Bank, 94 Wn. App. 820, 824, 976 P.2d 126 (1999). Worth contends that the sisters failed to demonstrate a genuine issue of fact for trial as to damage or proximate cause.

In the summary judgment motion, Worth argued that the sisters failed to identify factual support for the $2.1 million figure listed in Beaton's report. Worth also produced Newton's $1.4 million independent valuation based on specifically identified financial records. The sisters claim that they responded to Worth's summary judgment motion with "ample testimony" to demonstrate a question of fact for trial as to the damage element. But their own declarations do not identify a single account or asset of which they were not aware until after the settlement or that they claim was undervalued at the time of the mediation. Despite repeatedly suggesting in their briefing before this court that they "discovered" some kind of information after the mediation, the sisters fail to plainly identify any particular fact unknown to them before the settlement.

And contrary to the sisters' bald assertion, Beaton's report does not raise an issue for trial simply because it lists a different valuation than that described by Worth's expert, Newton. In his report, Beaton admits that he did not audit or perform an independent evaluation of Stewart's estate or the trust assets, but simply assumed that the limited materials he reviewed were "substantially true and correct." "'An opinion of an expert which is simply a conclusion or is based on an assumption is not evidence which will take a case to the jury.'" Melville v. State, 115 Wn.2d 34, 41, 793 P.2d 952 (1990), quoting Theonnes v. Hazen, 37 Wn. App. 644, 648, 681 P.2d 1284 (1984). In their response to the summary judgment motion, the sisters failed to identify any particular financial records or other evidence to support the $2.1 million valuation. And they offered nothing to contradict the specific evidence, including individually numbered account statements, tax returns, and notes prepared by Sholly, listed by Newton in support of his $1.4 million valuation. A party opposing summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or consideration of its affidavits or declarations at face value. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Because the sisters did not present specific facts to support a conclusion that they suffered any damage, an essential element of a malpractice claim, summary judgment was appropriate.

Moreover, the sisters fail to identify a genuine issue of material fact for trial as to proximate cause. To establish proximate cause, the sisters must demonstrate that "but for" Worth's alleged negligence, they would have obtained

a better result. Smith v. Preston Gates Ellis, LLP, 135 Wn. App. 859, 864, 147 P.3d 600 (2006), review denied, 161 Wn.2d 1011 (2007). Although proximate cause in a legal malpractice case is generally a question for the trier of fact, summary judgment dismissal is proper where the plaintiff fails to identify sufficient evidence of proximate causation. See, e.g., Griswold v. Kilpatrick, 107 Wn. App. 757, 760-61, 27 P.3d 246 (2001) (summary judgment for attorney appropriate where former client failed to demonstrate that attorney's delay resulted in lesser settlement amount).

Worth offered the declaration of attorney Robin Balsam as an expert in probate, guardianship, and trust matters in support of the motion for summary judgment. Balsam opined that the sisters "faced a long and difficult road in the TEDRA litigation," there "was no guarantee" they would receive an accounting or the appointment of an independent trustee, and, even if successful, "the cost of forensic accounting and other experts was likely to be very significant." In his declaration, Balsam described in detail the factual and informational basis for his opinion. Cf. Griswold, 107 Wn. App. at 761-62 (expert's speculative and conclusory opinion lacked substantive support in record and therefore did not create issue of material fact).

The sisters did not produce any expert opinion to dispute Balsam's opinion regarding the potential outcome of their TEDRA proceeding or identify any evidence in the record to support a conclusion that they would have obtained a better result if they had not settled at the mediation in January 2010. It is undisputed that as the secondary beneficiaries of the trust, the sisters were not

entitled to receive anything from Stewart's estate or the trust until Dunson's death, which did not occur until January 2013. There is no support in the record for their bald assertions that they "lost a substantial amount of probable inheritance" by settling or that their "rights" to their father's assets exceeded what they received as a result of the mediation. Because the sisters failed to raise a genuine issue of material fact on the element of proximate "but for" causation, the trial court properly granted summary judgment to Worth.

Affirmed.

Becker, J.

WE CONCUR:

Trickey, J.

Leach, J.