**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| RONALD AUER and JOHN TRASTER, | No. 46105-6-II |
| Appellants/Cross Respondents, | |
| v. | UNPUBLISHED OPINION |
| J. ROBERT LEACH and JANE DOE LEACH, his wife; CHRISTOPHER KNAPP and JANE DOE KNAPP, his wife; GEOFFREY GIBBS and JANE DOE GIBBS, his wife; ANDERSON HUNTER LAW FIRM, P.S., INC.; and SAFECO INSURANCE, | |
| Respondents/Cross Appellants. | |

BJORGEN, A.C.J. — Ronald Auer and John Traster sued the Anderson Hunter Law Firm

P.S., J. Robert Leach,[1] Jane Doe Leach, Geoffrey Gibbs, Jane Doe Gibbs, Christopher Knapp,

and Jane Doe Knapp (collectively lawyers[2]) alleging legal malpractice and violation of

Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. The trial court first denied

the lawyers' summary judgment motion seeking dismissal of the malpractice claim as time-

barred under RCW 4.16.080(2). The trial court then granted the lawyers' motion for summary

judgment on both the malpractice and CPA claims, determining that Auer and Traster failed to

raise genuine issues of material fact on essential elements of each claim. After Auer and Traster

moved for reconsideration on the malpractice claim and filed a supplemental declaration by their

---

[1] Leach's representation of Auer and Traster in the underlying suit involved in this appeal began
when he was in private practice and ended with his appointment to an open position on Division
One of the Court of Appeals.

[2] We refer to individuals by name when discussing claims pertaining only to them.

expert, Paul Brain, the trial court struck this declaration and denied reconsideration of its order dismissing the malpractice claim.

Auer and Traster appeal, arguing that the grant of summary judgment in favor of the lawyers was improper, because genuine issues of material fact exist as to whether the lawyers' alleged malpractice proximately caused Auer and Traster their injuries and whether the lawyers committed deceptive acts that affected the public interest. Auer and Traster also argue that the trial court erred or abused its discretion by refusing to consider the new evidence offered on reconsideration and by denying their motion for reconsideration. The lawyers cross-appeal the trial court's denial of their summary judgment motion to dismiss the malpractice claim on grounds of untimeliness.

We affirm the trial court's grant of summary judgment in favor of the lawyers on the malpractice and CPA claims. We also affirm the trial court's order striking Brain's supplemental declaration and its order denying reconsideration of its summary judgment order on the malpractice claim. As to the cross-appeal, we affirm the trial court's denial of summary judgment dismissing the malpractice claim against Anderson Hunter, Leach, Jane Doe Leach, Gibbs and Knapp as time-barred. However, we reverse the trial court's denial of summary judgment dismissing the malpractice claim against Jane Doe Gibbs and Jane Doe Knapp as time-barred. Accordingly, we affirm in part, reverse in part, and remand for the trial court to enter an order granting summary judgment dismissing the malpractice claim against Jane Doe Gibbs and Jane Doe Knapp.

FACTS

A.      The Underlying Lawsuit

In 2003, Auer and Traster purchased two lots to "construct upper scale single family

2

residences, as well as large commercial quality shop structures."[3] Clerk's Papers (CP) at 441.

Auer wanted his commercial shop to operate his business in; Traster wanted his for the pursuit of "various activities and hobbies." CP at 441.

The agreements for the purchase and sale of the lots each required the seller, the estate of Margaret Westland, to obtain certain permits and construct a driveway to the properties within 60 days of closing escrow. After closing, the estate began constructing that driveway. However, the estate failed to obtain the necessary permits and the driveway did not conform to the Snohomish County Code, causing the county to issue a stop work order for the project. That order, along with the lack of an "approved access road" to the two properties, rendered the properties ineligible for building permits and disrupted Auer's and Traster's plans for the lots.

Auer and Traster retained Leach and the Anderson Hunter Law Firm to pursue legal claims against the Westland estate, the realtor who drafted the purchase and sale agreements, and the realtor's employer. Auer and Traster filed suit for breach of contract against those defendants in 2003.

Auer's and Traster's relationship with Leach was a difficult one. Auer and Traster frequently complained to Christopher Knapp, Anderson Hunter's managing partner, about perceived failures to communicate, to take requested action, and to diligently pursue their claims. Knapp assured Auer and Traster that Leach would do a better job communicating with them and

---

[3] Traster apparently purchased both lots and Auer then purchased his from Traster. The lawyers argue that this makes Auer Traster's assignee and limits the liability of the lawyers in the underlying suit, and consequently their liability. Because the lawyers give the issue only passing treatment, we do not address it. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 416, 120 P.3d 56 (2005) (quoting *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004)).

promised that he would monitor the situation. Nevertheless, Auer and Traster became dissatisfied with Knapp's monitoring of Leach's work.

The acrimony between Leach, Knapp, Auer, and Traster eventually caused Anderson Hunter to try to end the attorney-client relationship. Knapp e-mailed Leach, telling him that "[t]his client is very rude. I would withdraw." CP at 470. Knapp also repeatedly told Auer and Traster that they might want to seek representation that would work better for them, but they refused.

By 2005, the estate had filed a motion for summary judgment. Leach recommended that Auer and Traster voluntarily dismiss the suit under CR 41 to avoid summary judgment and then refile the claim as a new lawsuit. Auer and Traster maintain that Leach's lack of preparation necessitated the nonsuit, but they agreed to the plan. Accordingly, the original suit was dismissed and a new one filed in 2006.

Effective March 1, 2008, the governor appointed Leach to an open seat on Division One of the Washington State Court of Appeals. Accordingly, Leach withdrew from representing Auer and Traster. However, they remained Anderson Hunter's clients and Geoffrey Gibbs, another attorney from the firm, began representing them.

Later in March, Gibbs informed Auer and Traster that his pretrial preparations had uncovered a potential conflict of interest that complicated his representation of both of them.[4] Auer and Traster told Gibbs that they had already discussed the potential conflict with Leach and had "come to an agreement to resolve" it. CP at 444.

---

[4] The alleged conflict of interest arose from the disparate size of Auer's and Traster's claims. Traster claimed a small amount of damages related to inconveniences caused by the delay in getting the building permits. Auer claimed similar damages plus large business losses. Gibbs informed Auer and Traster that the difference in the value of their claims created a potential conflict in deciding whether to accept any possible settlement offer.

Gibbs announced that Auer and Traster had failed to address his concerns and served a notice of withdrawal to terminate his and Anderson Hunter's representation of them. When Auer and Traster objected to the withdrawal, Gibbs filed a motion before the superior court, which then granted the withdrawal.

Auer and Traster eventually retained new counsel to represent them. Gibbs had previously informed Auer and Traster that, after taking over representation of them for Leach, he would only need to bill approximately $50,000 in order to take the matter through trial. Auer and Traster's new counsel billed them approximately $200,000 for time spent preparing for, and taking them to, a scheduled mediation.

The mediation resulted in a settlement between Auer and Traster and the defendants in the underlying suit. Although Auer and Traster valued their claims as worth over $8,000,000, they received only $500,000 in the settlement and a construction easement so that they could get a permit and complete the road required by the purchase and sale agreement. Auer maintains that he and Traster settled because the protracted legal battle caused by the defendants' lack of diligence had drained them of the financial resources necessary to continue to assert their claims.

B.      The Lawsuit Against the Lawyers

On February 14, 2011, Auer and Traster appeared pro se and filed summonses and a complaint in Snohomish County Superior Court. These named Anderson Hunter, Leach and his wife, Gibbs and his wife, and Knapp and his wife as defendants.

The complaint's first cause of action was malpractice. Auer and Traster alleged:

> That the said Defendants failed to fully advise Plaintiffs of their rights and appropriate tactics and strategy, failed to diligently pursue the litigation, had undisclosed conflicts of interest, served their own interest at the expense of the Plaintiffs, failed to pursue necessary discovery, failed to prepare the case for trial, necessitated dismissal of the 2003 case and refiling of the 2006 case, then withdrew from the 2006 case in 2008 as trial approached, made multiple misrepresentations

to Plaintiffs and claimed a wrongfully asserted conflict of interest between the two Plaintiffs herein as justification for withdrawal. That Defendants refused to disgorge payments wrongfully received and Plaintiffs were impaired in retaining replacement counsel and incurred additional litigation expenses as a consequence of the withdrawal of said Defendants.

CP at 1133.

The complaint's second cause of action was for violation of the CPA. Auer and Traster alleged:

That the said Defendants' conduct set forth above was unfair and deceptive within the meaning of the Consumer Protection Act, implicated the entrepreneurial aspects of the practice of law, is likely to be repeated, and constituted business practices of the Defendants.

CP at 1134.

In April 2011, Auer and Traster retained new counsel and on April 26 served the summonses, complaint, notice of appearance, and the superior court case summary printout on Anderson Hunter, Leach, Gibbs, and Knapp. However, the summonses and the notice of appearance were mistakenly captioned for King County Superior Court. The superior court case summary showed the action as filed in Snohomish County. On April 29, due to an impending scheduled vacation, Auer's and Traster's counsel filed a notice of unavailability listing the Snohomish County cause number of Auer's and Traster's action served on the defendants.

The lawyers served a special notice of appearance captioned for Snohomish County Superior Court on May 4, 2011. Further, the lawyers' counsel served a notice of withdrawal and substitution captioned for Snohomish County Superior Court on the parties and filed it in the Snohomish County Superior Court.

In early June 2011, the lawyers filed a motion to dismiss the action. They alleged that Auer and Traster had failed to properly serve them with process, warranting dismissal under CR

12(b)(4) and (5). Specifically, the lawyers contended that Anderson Hunter, Gibbs, and Knapp had never been served with a Snohomish County summons as required to complete commencement of the action and that Leach and the three Jane Doe defendants had never been served with any process at all.

On June 16, 2011, the lawyers' counsel accepted service of a summons and complaint on behalf of Leach and his wife. That summons listed Snohomish County as the action's venue.

With the service of a Snohomish County summons on Leach and his wife, the lawyers struck their original motion to dismiss and filed a motion for summary judgment seeking dismissal of the malpractice claim as time-barred under RCW 4.16.080(2). The lawyers argued that the summonses served on Anderson Hunter, Gibbs, and Knapp began commencement of an action in King County rather than completed commencement of the action in Snohomish County. They contended that the Snohomish County action was never fully commenced as required by RCW 4.16.170 until service of the summonses on Leach and his wife, which occurred outside both the three-year statute of limitations generally applicable to tort claims and the 90-day tolling period initiated by the filing of the complaint under RCW 4.16.170.

The trial court denied the lawyers' summary judgment motion requesting dismissal of the malpractice claim as time-barred, reasoning that the summonses substantially complied with the governing rules and that the failure to correctly identify the court was an amendable defect. Because the summonses served their purposes, namely notifying the lawyers of the deadline to answer Auer's and Traster's complaint and of the consequences for failing to do so, the trial court found that the defect in the summonses did not prejudice the lawyers. Given the lack of prejudice, the trial court granted Auer and Traster leave to amend the summonses to correctly

7

identify Snohomish County, rather than King County, as the court where they would litigate the action.

The lawyers then moved for summary judgment on both Auer's and Traster's claims, contending that no genuine issues of material fact existed on at least two of the elements of legal malpractice: the breach of a legal duty and causation. The lawyers also maintained that no genuine issues of material fact existed on at least three of the elements of the CPA claim: that their acts had occurred in trade or commerce, that their acts impacted the public interest, and that their acts had been unfair.

Auer and Traster responded by submitting additional evidence that they claimed showed the existence of genuine issues of material fact, including a declaration by their expert, Paul Brain. After reciting the elements of a legal malpractice claim, Brain stated that he assumed the existence of an attorney-client relationship that would create a duty of care, but that "[c]ausation may not be a proper subject for [his] opinion." CP at 600. Brain then opined that the lawyers had breached their duty of care by pursuing legal remedies rather than equitable ones, given Auer's and Traster's goals with the suit. Brain also declared that the lawyers had breached their duty of care by failing to diligently pursue Auer's and Traster's interests, failing to engage in timely discovery, and recommending that Auer and Traster take a nonsuit to avoid summary judgment. Finally, Brain opined that Gibbs' proffered reasons for withdrawing as counsel were pretextual.

The trial court granted the lawyers' motion for summary judgment on both of Auer's and Traster's claims. Though finding that Brain's declaration raised genuine issues of material fact about several breaches of duty by the lawyers, the trial court found no evidence that indicated or supported an inference that any breach caused Auer's and Traster's injuries. Specifically, the

trial court determined that Auer and Traster had failed to create a genuine issue of material fact regarding whether they would have succeeded in the underlying action absent the alleged malpractice. The trial court granted the motion for summary judgment on the CPA claim after determining that Auer and Traster had failed to establish that the withdrawal had affected the public interest.

Auer and Traster moved for reconsideration under CR 59(a)(1), (7)-(9) on the malpractice claim, submitting new evidence in conjunction with that motion. One of these new pieces of evidence was a supplemental declaration from Brain. In it Brain stated that "[t]he fact that [he] did not address causation in [his] previous declaration only represent[ed] the fact that [he] was not asked to offer an opinion on causation in that declaration." CP at 321. Brain then declared that he "would draw a direct and proximate causal link between the" lawyers' alleged negligence and the damages Auer and Traster suffered. CP at 321-22.

The lawyers moved to strike Brain's supplemental declaration. Applying the *Burnet*[5] factors, the trial court found that (1) Brain's statement that he had not been asked to opine about causation in his first declaration reflected a tactical or strategic decision to withhold his opinion until trial, (2) the willful decision to withhold Brain's opinion prejudiced the defendants' trial preparation, and (3) no lesser sanction would vindicate the purposes of discovery. Consequently, the trial court granted the lawyers' motion and refused to consider Brain's supplemental declaration with Auer's and Traster's motion for reconsideration. Given the exclusion of Brain's supplemental declaration, the trial court denied reconsideration.

---

[5] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 497-98, 933 P.2d 1036 (1997).

Auer and Traster appeal the order granting summary judgment and the order denying reconsideration. The lawyers cross appeal the order denying them summary judgment on the malpractice claim based on the alleged insufficient service of process.

ANALYSIS

I. SUMMARY JUDGMENT

A. Applicable Legal Principles

We review a trial court's decision to grant or deny a motion for summary judgment de novo. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). We perform the same inquiry as the trial court and may affirm a trial court's order on summary judgment on any ground supported by the record. *Lakey*, 176 Wn.2d at 922; *Washburn v. City of Federal Way*, 178 Wn.2d 732, 753 n.9, 310 P.3d 1275 (2013). We view the evidence, and all reasonable inferences allowed by that evidence, in the light most favorable to the nonmoving party when reviewing an order of summary judgment. *Lakey*, 176 Wn.2d at 922. Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). "'A material fact is one upon which the outcome of the litigation depends.'" *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004) (quoting *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963)).

"Summary judgment is subject to a burden-shifting scheme." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.2d 886 (2008). The party moving for summary judgment "bears the initial burden of showing the absence of an issue of material fact." *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A defendant moving for summary judgment may show the absence of an issue of material fact by pointing out the lack of evidence

supporting an essential element of the plaintiff's case. *Young*, 112 Wn.2d at 225, 225 n.1 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the defendant successfully shows the lack of support for an essential element of the plaintiff's claim, the plaintiff must produce evidence that raises a genuine issue of material fact or show why further discovery is warranted; the plaintiff's failure to do so entitles the defendant to judgment as a matter of law. *See Young*, 112 Wn.2d at 225-26, 226 n.2 (quoting *Celotex*, 477 U.S. at 332 n.3 (Brennan, J., dissenting)).

B.      The Cross Appeal: Whether the Malpractice Claim is Time-Barred

The lawyers cross appeal the trial court's denial of their motion for summary judgment to dismiss the malpractice claim, arguing that Auer and Traster failed to timely commence it. First, they contend that Anderson Hunter, Gibbs, and Knapp were served with a summons that commenced an action in King County rather than the correct county of Snohomish. Second, they claim that the Snohomish County action was not properly commenced until Auer and Traster served a summons on Leach and his wife, time-barring the malpractice claim against all defendants. The lawyers also argue that the trial court erred by refusing to order summary judgment on the malpractice claim with respect to Jane Doe Gibbs and Jane Doe Knapp because they were never served with any process. We agree that the trial court erred by not dismissing the malpractice claim against Jane Doe Gibbs and Jane Doe Knapp, but affirm the order denying summary judgment on these grounds with respect to Anderson Hunter, Leach, Jane Doe Leach, Gibbs, and Knapp.

1. Applicable Legal Principles

Proper service of process has both constitutional and statutory dimensions. *Scanlan v. Townsend*, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). The nonconstitutional dimension, at

issue here, is governed by both statute and court rules. RCW 4.16.170; chapter 4.28 RCW; CR 3-5. We review the meaning of statutes and court rules de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (statute); *see State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007) (court rules).

Generally a plaintiff must commence an action to recover damages to personal property or for personal injury within three years or the claim is barred.[6] RCW 4.16.080(2); *Brown v. Vail*, 169 Wn.2d 318, 328, 237 P.3d 263 (2010). To commence a civil action, the plaintiff must either (1) file the complaint with the superior court or (2) serve a copy of the summons and complaint on the defendant. CR 3. Filing the complaint or serving the summons and complaint tolls, for purposes of commencing the action, the statute of limitations for 90 days. RCW 4.16.170.[7] During that 90-day period the plaintiff must either (1) file the complaint if he or she first served a summons and complaint or (2) serve a summons and complaint if he or she first filed the complaint. RCW 4.16.170. If the plaintiff fails to both file the complaint and serve a summons and complaint within that 90-day period, the action is not deemed commenced for purposes of tolling the statute of limitations. RCW 4.16.170. By the explicit terms of RCW

---

[6] CPA claims are exempt from this general rule and instead must be commenced within four years. RCW 19.86.120.

[7] RCW 4.16.170 reads:

> For the purposes of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

4.16.170, serving any one of multiple defendants tolls the statute of limitations against all the defendants. *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 329, 815 P.2d 781 (1991). However, plaintiffs must still proceed with their cases in a timely manner and must serve a defendant in order to proceed with the action against that defendant. *Sidis*, 117 Wn.2d at 329-30.

CR 4 governs the form and content of a summons. *Quality Rock Prods., Inc. v. Thurston County*, 126 Wn. App. 250, 264, 108 P.3d 805 (2005) (citing CR 4(a) and (b)). It provides, as relevant to the lawyers' cross appeal:

> (b) Summons.
> (1) Contents. The summons for personal service shall contain:
> (i) the title of the cause, specifying the name of the court in which the action is brought, the name of the county designated by the plaintiff as the place of trial, and the names of the parties to the action, plaintiff and defendant;
> (ii) a direction to the defendant summoning the defendant to serve a copy of the defendant's defense within a time stated in the summons; [and]
> (iii) a notice that, in case of failure so to do, judgment will be rendered against the defendant by default. It shall be signed and dated by the plaintiff, or the plaintiff's attorney, with the addition of the plaintiff's post office address, at which the papers in the action may be served on him by mail.

We review the sufficiency of service de novo. *Streeter-Dybdahl v. Nguyet Huynh*, 157 Wn. App. 408, 412, 236 P.3d 986 (2010). The plaintiff bears the burden of making a prima facie case of sufficient service of process. *Streeter-Dybdahl*, 157 Wn. App. at 412.

2. The Nature of the Summons Served on Anderson Hunter, Gibbs, and Knapp

If the lawyers are correct that the summonses should be deemed King County summonses, then Auer and Traster failed to complete commencement of the Snohomish County action. If Auer and Traster are correct that the summonses were defective Snohomish County summonses, then they completed commencement of the Snohomish County action if they substantially complied with the rules and statutes governing service of process. We hold for

three reasons that the summonses were defective Snohomish County summonses and then turn to whether they nonetheless substantially complied with governing standards.

First, as a general matter, "the law favors the resolution of legitimate disputes brought before the court rather than leaving parties without a remedy." *In re Estate of Palucci*, 61 Wn. App. 412, 416, 810 P.2d 970 (1991). This legal preference may only be served by viewing the summonses as completing the commencement of the Snohomish County action, although defectively. Doing otherwise would bar Auer and Traster from bringing their claims before the court. *Palucci*, 61 Wn. App. at 416.

Second, and more importantly, the lawyers' argument runs contrary to "the civil rules' emphasis that substance trumps formality." *Quality Rock Prods.*, 126 Wn. App. at 265. The lawyers ask us to elevate the form of the caption of the summonses, the obvious result of a scrivener's error, over its actual function. That function is readily discernable from the documents served with the summons: a complaint which made clear that venue was proper only in Snohomish County and a superior court case summary showing that the action was filed in Snohomish County. The summonses served here were plainly associated with the action already filed in Snohomish County. The scrivener's error in the caption could not have reasonably led the lawyers to believe that the summonses were for some unknown action proceeding in King County Superior Court.

Third, service of a summons only commences an action under RCW 4.28.020, thereby initially invoking the jurisdiction in the trial court named in the summons, when service occurs before the plaintiff files the complaint with the court. Otherwise, it is the filing of the complaint that invokes the trial court's jurisdiction. RCW 4.28.020. A summons that commences an action would not have a cause number because it is only when a complaint is filed with the court that a

14

cause receives a number. *Cf. Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 548, 815 P.2d 798 (1991). The summonses served on Anderson Hunter, Gibbs, and Knapp all contained a cause number, specifically the one assigned to the Snohomish County action. These summonses could not have commenced an action already commenced. They therefore did not act to confer jurisdiction on the King County Superior Court. For these three reasons, the summonses served on Anderson Hunter, Gibbs, and Knapp were defective summonses for Snohomish County Superior Court.

3. Substantial Compliance and Amendability of the Summonses Served on Anderson Hunter, Gibbs, and Knapp

Having determined that the summonses served on Anderson Hunter, Gibbs, and Knapp were defective Snohomish County summonses, we now examine whether the summonses substantially complied with the relevant rules and statutes and whether the defect in the caption was amendable. We hold that the summonses substantially complied with the rules and statutes governing service and that any defect did not prejudice the lawyers, making the defect amendable.

The requirements as to the form of a summons laid out in CR 4 ensure that the summons serves its function, namely "'giv[ing] certain notice of the time prescribed by law to answer and to advise the defendant of the consequences of failing to do so.'" *Quality Rock Prods.*, 126 Wn. App. at 264 (quoting *Sprincin King St. Partners v. Sound Conditioning Club, Inc.*, 84 Wn. App. 56, 60, 925 P.2d 217 (1996)). Citing these purposes, Washington's Supreme Court has held that "'[a]ny summons . . . which definitely and certainly gives notice of these things must be held a substantial, hence a sufficient, compliance with that form.'" *Codd v. Westchester Fire Ins. Co.*, 14 Wn.2d 600, 605, 128 P.2d 968 (1942) (quoting *Spokane Merch. Ass'n v. Acord*, 99 Wash. 674, 170 P. 329, 8 A.L.R. 835 (1918)).

Both court rule[8] and statutory authority[9] permit the amendment of defective, but substantially compliant, process. These amendments are permissible "so long as the defendant is not prejudiced." *Sammamish Pointe Homeowners Ass'n v. Sammamish Pointe LLC*, 116 Wn. App. 117, 124, 64 P.3d 656 (2003). If the defect is amendable, the trial court should permit the amendment, and deny any motion seeking dismissal of the claims based on the defect, so long as the plaintiff moves to amend. *In re Marriage of Morrison*, 26 Wn. App. 571, 573-75, 613 P.2d 557 (1980).

The summonses served on Anderson Hunter, Gibbs, and Knapp substantially complied with their purpose. The summonses informed the defendants of the time prescribed by law to answer and the consequences of a default. Any defect in the summonses did not prejudice the lawyers. The complaint not only specified that Auer and Traster had filed suit in Snohomish County, but its factual allegations make clear that no venue other than Snohomish County was proper. The superior court case summary also confirmed that the action was filed in Snohomish

---

[8] CR 4(h) provides that

> At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.

[9] RCW 4.32.250 provides that

> A notice or other paper is valid and effectual though the title of the action in which it is made is omitted, or it is defective either in respect to the court or parties, if it intelligently refers to such action or proceedings; and in furtherance of justice upon proper terms, any other defect or error in any notice or other paper or proceeding may be amended by the court, and any mischance, omission or defect relieved within one year thereafter; and the court may enlarge or extend the time, for good cause shown, within which by statute any act is to be done, proceeding had or taken, notice or paper filed or served, or may, on such terms as are just, permit the same to be done or supplied after the time therefor has expired.

County. The lawyers appeared pro se in Snohomish County after receiving the summonses. When they retained an attorney, he appeared there as well. Most importantly, the lawyers timely filed answers to the complaint filed in Snohomish County Superior Court. As was proper, Auer and Traster moved to amend the summonses.

The lawyers claim that the trial court erred by allowing an amendment to the summonses, because proper summonses were already on file with the court and Auer and Traster did not serve those summonses. CR 5(d)(1) requires, in effect, that plaintiffs must file the summons and complaint served in accordance with CR 4 with the court. We have held that the summons filed need not be identical to the one served and that the plaintiff complies with RCW 4.16.170 by filing a summons "substantially identical" to the one served. *Nearing v. Golden State Foods Corp.*, 52 Wn. App. 748, 752, 764 P.2d 242 (1988). The unamended summonses here were substantially identical to the ones on file with the court: they had the same case name, cause number, and parties. More importantly, they had identical response times and contained identical language about the effect of a default. The summonses served by Auer and Traster complied with CR 5(d)(1). For all of these reasons, we hold that the trial court did not err by denying the summary judgment motion to dismiss Auer's and Traster's claims against Anderson Hunter, Knapp, and Gibbs due to untimely commencement. *Morrison*, 26 Wn. App. at 573-75.

4. Service on Leach and Jane Doe Leach

Auer and Traster served Leach and Jane Doe Leach with a summons on June 16, 2011. That summons properly listed Snohomish County as the action's venue, but was served outside the 90-day tolling period initiated by the filing of the complaint under RCW 4.16.170. The lawyers argue that the Snohomish County action was not properly commenced until this

17

summons was served on Leach and Jane Doe Leach and that this time-barred the malpractice claim against all defendants.

This argument fails under *Sidis*. That decision held that under RCW 4.16.170, serving any one of multiple defendants tolls the statute of limitations against all the defendants, subject to the restriction that a defendant must in fact be served before the action may proceed against that defendant. *Sidis*, 117 Wn.2d at 329-30. As held above, Anderson Hunter, Gibbs, and Knapp were served on April 26, 2011 in compliance with CR 5(d)(1), well within 90 days of filing the complaint. Leach and Jane Doe Leach were served in June 2011, before Auer and Traster proceeded against them. Thus, under *Sidis*, Auer and Traster properly commenced their action against Anderson Hunter, Leach, Jane Doe Leach, Gibbs and Knapp.

5. Service on Jane Doe Gibbs and Jane Doe Knapp

No affidavit of service or any other evidence shows service of process on Jane Doe Gibbs or Jane Doe Knapp. Under *Sidis*, 117 Wn.2d at 329-30, a defendant must be served at some point to maintain an action against her. Therefore, we reverse the order of summary judgment as far as it denied Jane Doe Knapp and Jane Doe Gibbs dismissal of Auer's and Traster's malpractice claim as time-barred. We remand for the trial court to enter an order granting summary judgment dismissing the malpractice claim against Jane Doe Gibbs and Jane Doe Knapp on those grounds.

C. The Malpractice Claim

Auer and Traster argue that the trial court erred by dismissing their malpractice claim on summary judgment because (1) the trial court applied an incorrect evidentiary standard when it required expert testimony on causation to survive the motion for summary judgment and (2) they

18

offered evidence that created genuine issues of material fact as to whether the lawyers'

malpractice proximately caused Auer's and Traster's injuries.[10]  We disagree.[11]

    1.  Applicable Legal Principles

    A plaintiff must show four elements to succeed on a claim of legal malpractice:

> (1) the existence of an attorney-client relationship giving rise to a duty of care on the part of the lawyer; (2) an act or omission breaching that duty; (3) damage to the client; and (4) the breach of duty must have been a proximate cause of the damages to the client.

*Nielson v. Eisenhower & Carlson*, 100 Wn. App. 584, 589, 999 P.2d 42 (2000).

    Proximate cause provides "the nexus between breach of duty and resulting injury." *Estep*

*v. Hamilton*, 148 Wn. App. 246, 256, 201 P.3d 331 (2008).  Establishing proximate cause

requires showing that the alleged breach of a duty was both a cause-in-fact and a legal cause of

the claimed injury.  *Nielson*, 100 Wn. App. at 591.

---

[10] Auer and Traster also argue that the trial court erred by granting the lawyers summary judgment because they failed to show the absence of genuine issues of material fact with citations to the record as required by *White v. Kent Medical Center, Inc.*, 61 Wn. App. 163, 170, 810 P.2d 4 (1991).  The lawyers, however, *did* point to the record to show that Auer and Traster had failed to support the essential elements of their claims with evidence.

[11] The lawyers raise a number of issues related to the dismissal of the malpractice claim that we do not address on their merits.

    First, the lawyers argue, for the first time on appeal, that the attorney judgment rule that we recognized in *Clark County Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 180 Wn. App. 689, 701-04, 324 P.3d 743, *review denied*, 181 Wn.2d 1008 (2014), shields them from liability. The lawyers failed to raise this issue to the trial court and we decline to consider it.  RAP 2.5(a).

    Second, the lawyers also assign error to the trial court's refusal to exclude certain evidence.  They have waived this assignment of error because they fail to make any argument as to how or why the trial court erred.  Instead, they simply incorporate their trial briefing.  We do not allow parties to argue issues in that manner.  *U.S. W. Commc'ns, Inc. v. Wash. Utils. & Transp. Comm'n*, 134 Wn.2d 74, 111-12, 949 P.2d 1337 (1997); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1988).

    Finally, the lawyers give passing treatment to arguments that Auer and Traster have not supported their claims of damages.  Again, we generally do not reach the merits of issues given passing treatment.  *Habitat Watch*, 155 Wn.2d at 416 (quoting *Thomas*, 150 Wn.2d at 868-69).

Auer's and Traster's appeal concerns the cause-in-fact prong of proximate causation. An act is a cause-in-fact of an injury, if, "'but for'" the act, the injury would not have occurred. *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 203, 15 P.3d 1283 (2001) (quoting *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999)). A cause-in-fact, in other words, is one that provides an "'immediate connection between an act and an injury.'" *Nielson*, 100 Wn. App. at 591 (quoting *City of Seattle v. Blume*, 134 Wn.2d 243, 251-52, 947 P.2d 223 (1997)). Where the injury would occur regardless of any breach by the attorney, there is no "but for" connection between the breach and the injury; consequently, in malpractice cases the plaintiff must show that, absent the breach, he or she "'would have prevailed or at least would have achieved a better result.'" *Estep*, 148 Wn. App. at 256 (quoting *Halvorson v. Ferguson*, 46 Wn. App. 708, 719, 735 P.2d 675 (1986)); *Geer v. Tonnen*, 137 Wn. App. 838, 840, 155 P.3d 163 (2007); *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 864, 147 P.3d 600 (2006); *Griswold v. Kilpatrick*, 107 Wn. App. 757, 760-61, 27 P.3d 246 (2001); *see Sherry v. Diercks*, 29 Wn. App. 433, 438, 628 P.2d 1336 (1981).

2. Expert Testimony

Auer and Traster first contend that summary judgment was inappropriate because the trial court held them to an improper burden of proof by requiring expert testimony about causation in order to survive summary judgment. We disagree.

Auer and Traster contend that the trial court "did not find . . . that [the] plaintiffs had not established evidentiary facts to meet their burden." Appellant's Reply Br. at 5 (emphasis omitted). To the contrary, the trial court found no evidence in the record that would directly show, or allow the inference, that Auer and Traster would have prevailed or obtained a better result in the underlying trial without the defendants' malpractice. As discussed below, it was

20

correct in that assessment. Given that lack of evidence, the trial court concluded that expert testimony was necessary to establish causation; otherwise the jury could only find the lawyers had proximately caused Auer's and Traster's losses by pure speculation.

The trial court did not apply an incorrect evidentiary burden. Washington has recognized that expert testimony is usually necessary where the jury could otherwise only find an element of negligence by pure speculation. *See Estate of Bordon v. Dep't of Corr.*, 122 Wn. App. 227, 243-44, 95 P.3d 764 (2004). An opinion from Division One of this court, *see Geer*, 137 Wn. App. at 851, and a treatise on legal malpractice, 4 *R. Mallen & J. Smith, Legal Malpractice* § 34:20, at 1172 (2008 ed.), have recognized this principle's application in the context of legal malpractice. The trial court's order on summary judgment reflects the logic of this authority and the principle that a plaintiff alleging malpractice must introduce evidence of each element of his or her claim to avoid summary judgment. *Geer*, 137 Wn. App. at 851 n.11.

Auer and Traster also contend, in their reply brief, that the trial court erred by requiring expert testimony on causation because any such testimony would be speculative and impermissible. Auer and Traster, however, waived this argument by failing to raise it in their opening brief.[12] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

---

[12] Regardless, their argument lacks merit. The type of expert testimony the trial court found necessary given the lack of other evidence of causation is analogous to the type of expert testimony about causation not only accepted, but generally required, in other types of professional malpractice claims. *E.g.*, *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983); *see Hill v. Sacred Heart Med. Ctr.*, 143 Wn. App. 438, 448, 117 P.3d 1152 (2008).

3. Causation

Auer and Traster next contend that the trial court erred by granting summary judgment, because they created genuine issues of material fact about causation. They contend that they showed (1) the failure to seek equitable relief, (2) the failure to seek timely discovery, and (3) the lawyers' lack of diligence caused them damages. They also argue that (4) the lawyers' pretextual withdrawal from representing them so soon before trial required them to retain a new attorney, resulting in higher attorney fees than they otherwise would have needed to pay. We consider these in turn.

Auer and Traster did not present sufficient evidence to create a genuine issue of material fact that the lawyers' failure to pursue equitable relief caused them damages. While Brain did opine that the pursuit of monetary damages breached the duty of care, he did not opine that this caused Auer and Traster any injury until his supplemental declaration. That declaration, however, was not before the trial court at the time of summary judgment, and we cannot consider it when reviewing the order on summary judgment. RAP 9.12. Without that declaration, Auer and Traster fail to create a genuine issue of material fact as to whether they would have prevailed in the underlying action, or at least have fared better than they did. Further, establishing causation based on the failure to seek equitable relief requires Auer and Traster to show that the trial court would have found their remedies at law inadequate. *Sorenson v. Pyeatt*, 158 Wn.2d 523, 531, 146 P.3d 1172 (2006) (equitable remedies unavailable unless damages at law inadequate). Brain never opined, in his original or supplemental declaration, that monetary damages were inadequate and Auer and Traster had no difficulty monetizing their losses.

Auer's and Traster's second argument, alleging the failure to seek timely discovery, also fails. Nothing in the record shows or allows an inference that Auer's and Traster's knowledge of

the underlying defendants' insurance coverage limits would have affected how the parties would have proceeded in the underlying suit. Instead, Auer and Traster offer only speculation that the outcome of the underlying suit would have differed had the lawyers timely obtained discovery. That speculation is insufficient to create a genuine issue of material fact on the element of causation. *Smith*, 135 Wn. App. at 864; *Young*, 112 Wn.2d at 225-26.

Auer's and Traster's third argument fares no better. Evidence in the record does create a genuine issue of material fact as to whether Auer and Traster settled because the lawyers' lack of diligence left them without the resources necessary to continue pursuing their claims. There is a difference, though, between the lawyers' actions causing Auer and Traster to accept the settlement and the lawyers' actions causing them an injury. Any lack of diligence only caused Auer and Traster an injury if they would have received more than the settlement they accepted had they gone to trial, *e.g.*, *Estep*, 148 Wn. App. at 256 (quoting *Halvorson*, 46 Wn. App. at 719), and no evidence indicates or allows the inference that they would have.

Auer's and Traster's fourth argument is that Gibbs offered pretextual reasons for withdrawing from his representation of them. Brain opined that Gibbs offered those pretextual reasons to advance the lawyers' interests, instead of those of Auer and Traster. Auer and Traster also point out that Leach had testified in his deposition that he did not believe the disparity in damages to be a conflict.

This evidence, however, does not controvert the validity of Gibbs' proffered reason for withdrawal: that the difference between the individual amounts at risk for Auer and Traster created a conflict of interest. Further, an attorney representing a client in a civil matter may only withdraw from representation with the permission of the court if the client objects to the withdrawal. *Kingdom v. Jackson*, 78 Wn. App. 154, 158, 896 P.2d 101 (1995); CR 71. The

attorneys presented the court with their reasons for withdrawing and received the trial court's permission over Auer's and Traster's objections. Thus, the immediate cause of the withdrawal was the order of the trial court.

We recognize that Auer and Traster alleged that in his argument on withdrawal Gibbs made inaccurate representations to the court about Auer's and Traster's payment status and their failure to respond to his communications. We make no determination of the truth of these allegations. These representations, however, do not raise factual issues as to whether the asserted reason for withdrawal, the presence of a conflict, was an artifice or pretext. Rather, at most they may raise an issue as to the validity of the order of withdrawal. The validity of that action, though, is not before us.

Auer and Traster raise no genuine issues of material fact about causation as to their malpractice claim. The court properly entered summary judgment for the lawyers on that claim.

D.    The CPA Claim

Auer and Traster also contend that the trial court erred by dismissing their CPA claims on summary judgment because they offered evidence that would create a genuine issue of material fact as to (1) whether the lawyers acted deceptively or unfairly in withdrawing from representation and (2) whether these deceptive or unfair acts affected the public interest. We affirm the order of summary judgment on the CPA claim on different grounds, because the evidence did not raise a genuine issue of material fact as to whether the lawyers' actions related to withdrawal caused Auer and Traster injury.

1.  Applicable Legal Principles

The CPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The CPA contains a

24

private right of action allowing individuals to enforce its proscriptions. RCW 19.86.090. Success on a CPA claim requires a plaintiff to establish five elements: "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) [a] public interest impact, (4) injury to [the] plaintiff in his or her business or property[, and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The failure to make the necessary showing on any of the elements defeats a CPA claim. *Hangman Ridge*, 105 Wn.2d at 784.

2. Causation

For the reasons set out above in the analysis of the malpractice claim, the lawyers' withdrawal from representation was not the proximate cause of injury to Auer and Traster. Once Auer and Traster opposed it, withdrawal could only be granted by court order. After hearing from both sides, the trial court granted the withdrawal. Gibbs' claimed misrepresentations to the court in arguing for withdrawal may raise a question about the basis for the order, but the validity of the court's withdrawal order is not before us. Because the court ordered withdrawal in an action we must presume valid, the evidence does not show the needed causal link between the lawyers' actions and Auer's and Traster's increased expenses due to the withdrawal.

We may affirm a challenged decision on any grounds supported by the record. Accordingly, we affirm the order of summary judgment on the CPA claim.

II. RECONSIDERATION

Auer and Traster claim that the trial court improperly (1) excluded Brain's supplemental declaration on reconsideration and (2) denied the motion for reconsideration. Again, we disagree.

A.    Applicable Legal Principles

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Landstar Inway, Inc. v. Samrow*, 181 Wn. App. 109, 120-121, 325 P.3d 327 (2014). We review a trial court's "decision to consider new or additional evidence presented with a motion for reconsideration" for an abuse of discretion. *Martini v. Post*, 178 Wn. App. 153, 162, 313 P.3d 473 (2013). A trial court abuses its discretion where it exercises its discretion in a manifestly unreasonable manner or on untenable grounds or for untenable reasons. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 144, 331 P.3d 40 (2014).

B.    Brain's Supplemental Declaration

Auer and Traster first contend that the trial court abused its discretion when it refused to consider Brain's supplemental declaration, which they offered in conjunction with their motion for reconsideration, claiming that nothing in CR 59 or case law interpreting that rule prevented the trial court from considering new evidence on reconsideration. Auer and Traster correctly characterize the trial court's ability to consider new evidence. The court, however, excluded Brain's supplemental declaration as a discovery sanction: Auer and Traster had not provided Brain's opinion as required by the discovery rules until long after the discovery cutoff.

In *Keck v. Collins*, No. 90357-3, 2015 WL 5612829 (Sept. 24, 2015), the Supreme Court held that the trial court must consider the factors from *Burnet*, 131Wn.2d at 497-98, on the record before striking untimely filed evidence submitted in response to a summary judgment motion. *Keck*, No. 90357-3, 2015 WL 5612829 at *8. Our review of the trial court's decision is for an abuse of discretion. *Id*. Only in their reply brief do Auer and Traster cite *Burnet* or argue that the trial court erred by excluding Brain's supplemental declaration as a discovery sanction.

Under *Cowiche Canyon Conservancy*, 118 Wn.2d at 809, Auer and Traster waived this claim of error by failing to raise it until their reply brief.

C.    Denial of Reconsideration

Without Brain's supplemental declaration, any new evidence considered by the trial court did not change the analysis of the causation issue:  nothing before the court on reconsideration showed that Auer and Traster would likely have prevailed or obtained a better result in the underlying matter.  With that, any claim of malpractice fails for lack of evidence to support the causation element, and reconsideration was unwarranted.  *Cf. Martini*, 178 Wn. App. at 164 (reconsideration of summary judgment warranted where all the evidence before the court establishes a genuine issue of material fact).

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of the lawyers on the malpractice and CPA claims. We also affirm the trial court's order striking Brain's supplemental declaration and its order denying reconsideration of the malpractice claim.  On the cross-appeal, we affirm the trial court's denial of summary judgment dismissing the malpractice claim against Anderson Hunter, Leach, Jane Doe Leach, Gibbs and Knapp as time-barred, but reverse the trial court's denial of summary judgment dismissing the malpractice claim against Jane Doe Gibbs and Jane Doe Knapp on the same grounds.  Accordingly, we remand for the trial court to enter an order granting summary judgment dismissing the malpractice claim against Jane Doe Gibbs and

Jane Doe Knapp as time-barred.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

LEE, J.

SUTTON, J.